**Michael Levine, Esq.**
**LEVINE & ASSOCIATES, P.C.**
15 Barclay Road, Scarsdale, NY 10583
Telephone (914) 600-4288; e-mail: ml@LevLaw.org
*Attorneys for Mosdos and Chofetz Chaim Inc.*

Kevin Nash, Esq.
**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
1501 Broadway, 22nd Floor, New York, New York 10036
Telephone (212) 221-5700; e-mail: knash@gwfglaw.com
*Attorneys for Rabbi Aryeh Zaks*

**Tracy L. Klestadt, Esq.**
**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS**, LLP
200 West 41st Street, 17th Floor, New York, NY 10036-7203
Telephone (212) 972-3000; e-mail: tklestadt@klestadt.com
*Attorneys for Congregation Radin Development Inc.*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | **Hearing Date:** |
| **SOUTHERN DISTRICT OF NEW YORK** | **August 30, 2021** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | **10:00 a.m.** |
| In re:                                                                   : | **Chapter 11** |
|         MOSDOS CHOFETZ CHAIM INC.,                                        | **Case No. 12-23616-rdd** |
|                                         Debtor.       : | **Post-Confirmation** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | |
| CONGREGANTS OF MOSDOS CHOFETZ CHAIM INC. | |
| a/k/a KIRYAS RADIN,                                      : | Adv. Pro. No. 21-07023-rdd |
|                         Plaintiff, | |
|         - against –                                        : | |
| | |
| MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC., : | |
| TBG RADIN LLC, SHEM OLAM, LLC, CONGREGATION | |
| RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE    : | |
| WALDMAN ZAKS, MENDEL ZAKS, GITTEL ZAKS | |
| LAYOSH, ELIYAHU LAYOSH, SAMUEL MARKOWITZ,   : | |
| DEBORAH ZAKS HILLMAN, YOM T. HENIG, STEVEN | |
| GREEN, DANIEL GREEN, ABRAHAM ZAKS and            : | |
| STERLING NATIONAL BANK, | |
|                         Defendants.     : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | |

**MOVANTS' RESPONSE TO "REPLY" MEMORANDUM OF LAW OF**
**RESPONDENTS [DE-114]**

This memorandum of law is submitted on behalf of Congregation Radin Development Inc. ("CRDI"), Rabbi Aryeh Zaks ("Rabbi Aryeh") and Chofetz Chaim Inc. ("CCI") (collectively, "Movants") in response to the purported "reply" memorandum of law [DE-114] of Rabbi Mayer Zaks ("Rabbi Mayer"), Nachum Brody ("Brody"), Shimon Zaks, Yisroel Hochman, Faigy Hochman ("Faigy") and Sima Zaks ("Sima", and collectively, "Respondents") and in further support of the Motion of the Movants for an Order (i) entering monetary judgments against the Respondents), (ii) assessing actual and punitive damages; and (iii) ordering that a writ of body attachment be entered for any future violations of the Injunction [DE-65] (the "Motion").[1]

I. **The Court Need Not Consider or Interpret the Alleged Rules of the Synagogue that Allegedly Applied to the Congregation That Held Services on the CRID Property Prior to the Sale to CRDI**.

On August 26, 2021, the Respondents submitted what they refer to as a "reply" memorandum of law, wherein they submitted new arguments and new evidentiary material that was not presented in the Respondents' Pre-Trial Memorandum [DE-101] or their previously designated trial exhibits, *e.g.* that an unnamed "congregation" that held services on the CRDI Property prior to the time that the CRDI Property was sold to CRDI had a "unique set of rules for conduct of its affairs based upon the Rules of Synagogue, Dated May 21, 2000," and that these alleged rules are religious in nature and prevent the Court from rendering a decision on the Motion. Leaving aside that it is wholly inappropriate for the Respondents to submit new arguments and purported new evidence in an alleged reply brief just mere days before trial, the new arguments and purported evidence are wholly irrelevant.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Motion.

2

As set forth in the Movants' Pre-Trial Memorandum [DE-115], the issues before this Court are *strictly* secular. *To wit*, do CRDI, as the property owner, and CCI, as the lessee of a portion of the CRDI Property, have authority to determine who has the right to enter onto their private property, and do any of the Respondents have a right under New York State law to enter onto the CRDI Property that was not terminated by the Confirmation Order. How the unnamed "congregation" that the Respondents allege holds services on the CRDI Property conducts its internal affairs has no import in the Court's analysis, and the Court is *not* required to interpret any religious rules or regulations to determine whether to enforce an Injunction and contempt order that it previously issued. To the extent that there is some purported "defense" raised to the same based upon a claim that Respondents have some "property" rights to housing units, and appurtenant rights to other buildings, as a result of purported housing agreements (not a single executed one of which has been produced in *any* of their own names), that is *strictly* a secular matter involving an interpretation of the Court's Confirmation Order and the law applicable thereto. They do *not* claim to have any such housing occupancy rights as a "religious" matter, rather they claim (erroneously as a matter of law) that English-language (albeit nonexistent) agreements grant them such rights. But that is a matter of contract interpretation, i.e., secular law.

To the extent that there is some claim that Respondents have some First Amendment right to enter onto and conduct activities on *someone else's* private property, the Supreme Court and New York's highest Court has repeatedly made it crystal clear that private property rights prevail, and that a private property owner has the absolute, and constitutionally protected, right to exclude *whomever it wishes* from its property (as we conclusively established in the Movants' Pre-Trial Memorandum). It is purely a secular legal issue and one that has been already conclusively determined against Respondents' "position."

To the extent that Respondents assert that New York's Religious Corporations Law prohibits the Court from determining whether a property owner can exclude persons from its property and/or whether an Injunction that prohibits entry onto private property can be enforced, we have established in our responding brief that that "position" is meritless. *Whatever* the "motives" of CRDI for excluding persons from its property – whether altruistic or malevolent – it has an *absolute* right to do so, and its exercise of that right cannot reasonably be challenged by persons who claim to want to worship on property that they do to own. This is not a matter of "forcing" anyone to come before a rabbi that her or she does not wish to come before; each and every one of the Respondents are free to have Rabbi Mayer (or anyone else) be their religious leader, and Movants do not seek to have this Court do anything that impedes that right. But, just as Rabbi Mayer cannot barge into and begin to conduct services in the United Methodist Church on Madison Avenue in Spring Valley, or the First Baptist Church on Hoyte Street in Spring Valley, or the Russian Orthodox Church on West Street in Spring Valley, or the Masjid Al-Qadir Mosque on West Church Street in Spring Valley, without the permission of the owner of those properties, he cannot engage in such activities on the CRDI Property without CRDI's permission. Nor can he reasonably claim that depriving him of the "right" to conduct services at any of those privately-owned Methodist, Baptist, Russian Orthodox or Masjid places of worship would constitute "state action" favoring one religious leader over another. He can conduct services anywhere he likes, as long as it is not on the private property of an entity that prohibits him from entering onto such property.

Notably, Rabbi Mayer and certain of the Respondents have changed their story regarding the identity of the "congregation" that allegedly they are "congregants" of as they lost one litigation after another. Initially, Rabbi Mayer alleged in December 2019 that the congregation which

"conducts religious services, classes and lectures" on the CRDI Property was Mosdos Chofetz Chaim, Inc. *See Declaration of Rabbi Mayer in Support of Mosdos Chofetz Chaim Inc.s' Motion to Remand, or in the Alternative, for the Appointment of a Receiver and Temporary Restraining Order*, [Adv. Proc. 20-08949, DE-6-1] at ¶ 2.  Then when Rabbi Mayer, as a purported representative of Mosdos, and Mosdos lost at trial in Adversary Proceeding 20-08949, the alleged parties in interest magically transformed into what they claimed to be the separate entity "Congregants of Mosdos Chofetz Chaim, Inc., also known as Kiryas Radin." Because their strategy to make that "name change" to use this Adversary Proceeding to attempt an end run around this Court's decision in Adv. Proc. No.: 20-08949 dismissing the complaint filed by Rabbi Mayer and Mosdos, proved fruitless, certain of the parties in interest then frivolously commenced yet *another* matter against CRDI and others (also now pending before this Court under Adv. Pro. 21-7028) on behalf of "congregants of the synagogue located at 1-60 Kiryas Radin Drive, Spring Valley, New York").

Then, when it became obvious that that action was doomed, they commenced yet a fourth action, *Congregation Radin Development Inc. et al. v. Tom T. Henig et al,* Adv. Proc. 21-07030 *("CRDI v. Hennig"),* now incredibly claiming that CRDI was the "congregation" that operated on the CRDI Property, and that *they* (who were simultaneously suing CRDI in two other Adversary Proceedings, including this one) were the congregants of, and *controlled*, CRDI.

Now mere days before the evidentiary hearing on the Motion, the Respondents, perhaps rightfully concerned about the inconsistencies regarding the nature of the alleged congregation, pretend that they are "congregants" only of an unnamed "congregation that holds services on the Kiryas Radin Campus" and point to twenty-one-year-old alleged "Rules of the Synagogue" that refer to yet another entity, "Yeshiva Chofetz Chaim of Radin."

5

It is curious that the Respondents argue now *for the first time* that the alleged "Rules of the Synagogue" govern the conspicuously unnamed "congregation" that allegedly currently holds services on the CRDI Property. It is strange indeed, given that certain of the Respondents, including Rabbi Mayer and Shimon Zaks, have suggested in *CRDI v. Hennig* that CRDI is the congregation that operates on the CRDI Property and that they have the right to enter upon and use the CRDI Property *because they are allegedly members and/or trustees of CRDI*. Leaving aside the farcical nature of those allegations, it is indisputable that CRDI did not even exist until 2019, almost two decades after these purported "rules" were allegedly in force for some entity that is not part of the case before this Court. The Respondents do not explain how the Rules of the Synagogue from 2000 that applied to a congregation known as "Yeshiva Chofetz Chaim of Radin" could *possibly* govern CRDI, the entity that now owns the subject property (and which Respondents claimed in *CRDI v. Hennig* is the entity currently holding services on the CRDI Property). The Respondents' new position is diametrically opposed to the position taken in *CRDI v. Hennig* (*to wit*, that they are the members and/or trustees of CRDI and that CRDI is the congregation that operates on the CRDI Property). But this is not in any way surprising. As the Court is well aware, Rabbi Mayer has taken inconsistent and contradictory positions throughout the various stages of litigation that commenced in December 2019.

But the salient point here is that despite the Respondents' best efforts to twist and contort the facts – changing the purported identity of the entity that they claim they are "congregants" of whenever they believe it is in their strategic interest to do so – *who* comprises the "congregation" that uses the CRDI Property is *completely* irrelevant, as is who they chose as their spiritual leader. Regardless of the entity that supposedly worships in the CCI Building, and regardless of the identity of their leader, this remains a strict matter of real property law and this Court need not

6

(and should not) determine either of those structural issues. The Movants are *not* asking the Court to install a rabbi, to interpret any rules or regulations of any congregation, or to resolve or otherwise engage in any dispute regarding the governance or membership of any congregation. The Court need not delve any further into the facts than whether CRDI and CCI may choose who can enter onto their private property.

**II.    This Court Has Already Rejected the Respondents' Argument that the Court Lacks Subject Matter Jurisdiction.**

In their "reply," Respondents allege that the Court lacks subject matter jurisdiction over this dispute and that they cannot be deemed to have waived that argument. However, the Court has already determined that is has subject matter jurisdiction to issue the Injunction and the Contempt Order. On May 25, 2021, the Court entered the modified Injunction, which provides in part that the Court has jurisdiction under 28 U.S.C. §§ 157(a)-(b) and 1334(b), the confirmed Chapter 11 Plan in this case and the Court's Confirmation Order (which provides for the transfer of the CRDI Property, free and clear), to enter the injunctive relief provided for therein. The Respondents acknowledged the existence of the Court's prior finding regarding subject matter jurisdiction on (i) June 22, 2021, when Rabbi Mayer filed a Statement of Issues to be Presented and Designation of Items to Be Included in the Record on Appeal [DE-59], wherein he identified as an issue for appeal whether the Bankruptcy Court improperly ruled that it had subject matter jurisdiction to issue the Injunction, (ii) June 25, 2021, when Rabbi Mayer argued in his Memorandum of Law in Support of Motion for Stay Pending Appeal and Temporary Restraining Order (Civil Action 21-04688-PMH, DE-17] that this Court erroneously ruled that it had subject matter jurisdiction to issue the Injunction, and (iii) on July 30, 2021 when Rabbi Mayer argued in the Appellants' Brief filed in the United States District Court for the Southern District of New York (Civil Action No: 21-05654-PMH DE-15]) that this Court erred in determining that it had

7

subject matter jurisdiction to issue the Injunction. Thus, that determination is already the "law of the case," and remains so unless that determination is reversed on appeal.

Respondents now claim that they do not contest that CRDI owns the CRDI Property (notwithstanding that they are contesting that in at least one appeal and at least two adversary proceedings), but they assert that their right to enter onto the CRDI Property arises from "historical housing policy and agreements of the Campus,[2] occupancy rights and the appurtenant rights as fully set forth in the pre-trial memorandum," which they argue must be adjudicated by a state court. The Respondents fails to acknowledge or to comprehend that the Movants are asking the Court to enforce the finding in the Confirmation Order that Mosdos was not a party to any unexpired executory contracts or leases as of the entry of the Confirmation Order, and to also enforce the free and clear sale language contained in the Confirmation Order, which provided that CRDI purchased the CRDI Property free and clear of any and all liens, claims and encumbrances, including any alleged rights arising from purported expired historical agreements or historical housing policies of Mosdos, Yeshiva, Chofetz Chaim or Radin or any other congregation that the Respondents believe existed prior to the sale of the CRDI Property to CRDI.

For the reasons stated above and, in the Movants' Pre-Trial Memorandum, the Movants respectfully submit that the Motion should be granted in its entirety after the evidentiary hearing.

---

[2] "The Campus" is, apparently, the new "identity iteration" of the shifting entity that they purportedly are representatives of (i.e., the new "code name" for Mosdos). Of course, there is *no* entity called "the Campus," nor does any such nonentity have any property (or other) rights of any kind, nor can anyone else have any rights as purported representatives of such nonentity. As Alice notoriously once said, "curiouser and curiouser."

Dated: August 28, 2021

Respectfully submitted,

LEVINE & ASSOCIATES, P.C.

By:  /s/ Michael Levine
    Michael Levine
15 Barclay Road
Scarsdale, NY  10583
Telephone (914) 600-4288
Facsimile (914) 725-4778
e-mail: ml@LevLaw.org
*Attorneys for Defendants Mosdos and CCI*

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By:  /s/ Tracy L. Klestadt
    Tracy L. Klestadt
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone (212) 972-3000
Facsimile (212) 972-2245
Cell Phone (917) 607-7863
Email: TKlestadt@Klestadt.com
*Attorneys for CRDI*

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP

By:  /s/ Kevin Nash
    Kevin Nash
1501 Broadway, 22nd Floor
New York, NY 10036
Telephone (212) 221-5700
Facsimile (212) 221-6532
Cell Phone (516) 330-7107
Email: knash@gwfglaw.com
*Attorneys for Rabbi Aryeh Zaks*