# EXHIBIT E

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3
 4
     -------------------------------x
 5
     IN THE MATTER OF:
 6
     MOSDOS CHOFETZ CHAIM INC.           CASE NO. 12-23616-rdd
 7                                       CHAPTER 11
              Debtor.
 8   -------------------------------x
 9   CONGREGANTS OF MOSDOS CHOFETZ
     CHAIM, INC.
10              Plaintiffs,
     vs.                                 ADV. CASE NO. 21-07023-rdd
11
     MOSDOS CHOFETZ CHAIM INC., ET AL.
12              Defendants.
     -------------------------------x
13
14              United States Bankruptcy Court
15              300 Quarropas Street
16              White Plains, NY  10601
17
18              Monday, August 30, 2021
19
20              10:10 A.M.
21   B E F O R E:
22   HON. ROBERT D. DRAIN
23   U.S. BANKRUPTCY JUDGE
24
25   ECRO:  ART
```

|   |   |
|---|---|
|   | Mosdos Chofetz Chaim, Inc., Debtor    243 |

1  and in light of that, I can -- at the request of CRDI and its
2  new tenant, enforce that order.  And that's what I'm going to
3  do.
4           Now, I don't think, and I don't believe that this
5  is the case that CRDI is looking to evict people.  The relief
6  sought here was to restrict the leading of the services and
7  the conduct of the services, primarily, and again, the order
8  would need to be very clear, and the advanced notice to the
9  person that would then be subject to the contempt under the
10 order would have to be clear as to what they couldn't do.
11          MR. GRAUBARD:  Let me ask you, Your Honor.  Under
12 your order now, you have probably upwards of 50 families
13 living there, who were teaching and learning in the Yeshiva.
14 Are you telling me that tomorrow they have to move out?
15          THE COURT:  No.  I'm not telling you that.  I'm not
16 telling you that at all.
17          MR. GRAUBARD:  Are you telling me that by living
18 there, they are now in violation of the injunction?
19          THE COURT:  I -- first of all, there has been no
20 request that they be -- that they leave.  The request so far
21 was limited to going onto the synagogue property for specific
22 purposes, or taking specific actions, including disrupting
23 services.
24          As I understood Rabbi Aryeh Zaks' testimony, that's
25 what he was referring to.  If he's seeking other relief that

Mosdos Chofetz Chaim, Inc., Debtor                     244

1  would be tantamount to eviction, I think that needs to be
2  enforced by the state court.  I agree with you on that.
3              MR. GRAUBARD:  Okay.  Then the order --
4              THE COURT:  But I don't think that's what he's been
5  looking for.
6              MR. GRAUBARD:  Well, Your Honor, the motion was --
7  said that just by stepping onto the property, they were in
8  violation of that injunction.
9              THE COURT:  But that's not how I --
10             MR. GRAUBARD:  And by walking into the building --
11             THE COURT:  -- that's not -- but I -- I don't think
12 I can be any clearer.  I'm not awarding sanctions against
13 them for stepping onto the property, because they had two
14 grounds that raised a fair ground for doubt, although
15 frankly, I'm not sure they had one of the grounds in mind
16 when they did it, at the time.  Now, they don't, because my
17 ruling is clear.  They don't have any ground for doubt as far
18 as attending services and the like if, in fact, they're
19 instructed not to do so.
20             Now, based on what I heard of Rabbi Aryeh's
21 testimony, I doubt he is going to instruct, for example,
22 Sima's acts not to go to service.  I think what he's going to
23 do is instruct the male respondents not to engage in the
24 services, except as expressly authorized, and he has a right
25 to do that under the case law.

|   |   |
|---|---|
| Mosdos Chofetz Chaim, Inc., Debtor | 245 |

1    MR. GRAUBARD:  I don't know --

2    THE COURT:  I don't believe he's going to send them

3  a notice saying that you're in violation of the injunction by

4  living here.  And I would not direct the marshals to evict

5  anyone on that basis.  I don't believe they have a right to

6  live there, and I think the record shows that as to these

7  specific respondents.  And, frankly, I believe they would be

8  collaterally estopped from arguing that in any state court

9  eviction action.

10    So the order is going to be important here.  And I

11  think I know what it needs to say, but I'm going to ask you

12  to circulate it to Mr. Graubard before you email it to

13  chambers, so that he will have the opportunity to see if it's

14  consistent with my ruling.  And the ruling, again, is that

15  based on the clear record before me, there is no fair ground

16  for doubt now as far as the issues raised by the respondents.

17  And I believe there are no other issues.  They've had plenty

18  of time to raise any other issue as to the enforceability of

19  my May 21 order, as modified in June.  And therefore, if they

20  violate that order, which will provide that it is violated if

21  they take an action contrary to clear instructions not to by

22  CRDI and CCI -- or CCI, then they will be in contempt and

23  will be sanctioned on a coercive basis, $5,000 per incident.

24    MR. GRAUBARD:  Your Honor, I --

25    THE COURT:  I will not enforce the order, other

Mosdos Chofetz Chaim, Inc., Debtor    246

1  than by a monetary sanction, and I will not order sanctions
2  that are tantamount to an eviction.  That relief will have to
3  be found -- obtained from another court.  But I am finding
4  today that the respondents have failed to establish any fair
5  ground for doubt going forward on either of their arguments
6  that they are now making.  They've already waived the one
7  argument as to CRDI's ownership.  The other arguments that
8  they were making are: one, that somehow based upon a claimed
9  property interest in the Kiryas Radin property, they had a
10 right to go onto the synagogue, contrary to the instructions
11 of the owner.  They have failed to show any property interest
12 at all, let alone one that gave them that right.  Secondly,
13 they have failed to show on these facts a right under the
14 First Amendment's establishment clause, freedom of religion
15 clause, to continue to worship at the synagogue, contrary to
16 the views of the owner that are clearly expressed to them, or
17 to worship in a certain way at the synagogue, contrary to the
18 views.
19        Now, I would hope and I trust that Rabbi Aryeh will
20 use that power sparingly.  The case law has made it clear,
21 though, that that power can be used.  It can clearly be used
22 to prevent disruption and the threat of violence.  And
23 frankly, if someone is asserting a right that they don't
24 have, it forces unfairly the party that has the right, namely
25 the owner, to act violently, and the courts have recognized

Mosdos Chofetz Chaim, Inc., Debtor 248

1  it's been circulated to Mr. Graubard.  It doesn't have to be
2  formally settled.  But I would like to enter it before the
3  Jewish holidays so that the parties understand clearly what
4  can and cannot be barred.  And then the notices are going to
5  have to be very clear, because I don't want there to be any
6  fair ground for doubt as to what behavior for a specific
7  person is barred.
8         MR. SCOTT:  Your Honor, this is Brendan Scott.  Can
9  I ask for a point of clarification?  Based upon your finding
10 that the respondents do not have an occupancy right, and I
11 just want to say this isn't something we're planning to do,
12 but I just want to be clear.  Should the order also include
13 language that to the extent CRDI asks someone to vacate a
14 residence, and they fail to do so, that they would be subject
15 to sanctions?  I mean, it may be that the reaction to this --
16 what happens today, Your Honor, is that there is a
17 significant disturbance on the campus.  We don't know how
18 this is going to effect --
19        THE COURT:  I am not going to enforce sanctions
20 that are tantamount to an eviction, and I'm not going to
21 direct an eviction.  I will make a finding, which I have
22 made, on the record.  But none of the respondents, to my
23 mind, has an occupancy right, but the request to evict them
24 is going to have to come from the state -- the order will
25 have to come from the state court.

Mosdos Chofetz Chaim, Inc., Debtor                254

1  right to do so. And the record is clear that at least these
2  people, and I don't believe there's any evidence that other
3  people have a lease or a separate right, don't have the --
4  ultimately, that call the is owner's.
5          MR. GRAUBARD:  Okay.  Now -- so now, what about in
6  another 35 or 40 families that were not part of this
7  proceeding, but who have occupancy rights similar to the
8  respondents here?  What happens with them?
9          THE COURT:  Well, if they're the same occupancy
10 rights, they won't have a fair ground for doubt.  They will
11 have to be given notice of the order, and they won't have a
12 fair ground for doubt.  Again, they should not be told,
13 because it's not true, that they're going to be evicted.
14 That's not what I'm saying.  I think this is a very narrow
15 set of facts that will be enforced.  Although, there's a
16 broader right to do so.
17         MR. GRAUBARD:  Okay.  I just want to preserve the
18 record that the testimony that we had, primarily from Shimon
19 Zaks, that the existence of CCI, although maybe on paper, and
20 is not a congregation, even Rabbi Aryeh Zaks said the only
21 members are people of his family, and that does not
22 constitute a congregation.  I want to preserve that for the
23 record.
24         THE COURT:  You know, I guess it's your client's
25 risk, frankly.  But, you know, I've mentioned this before.