# EXHIBIT H

# LEVINE & ASSOCIATES, P.C.
## ATTORNEYS-AT-LAW

15 Barclay Road
Scarsdale, New York  10583
e-mail: ml@LevLaw.org
Fax  (914) 725-4778
Telephone  (914) 600-4288

April 13, 2022

**Via ECF and email**

Hon. Robert D. Drain
U.S. Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601-4140

*Re: Congregants of Mosdos v. Mosdos (21-07023)*

Dear Judge Drain:

The undersigned is counsel to certain of the Movants in the above-referenced adversary proceeding.  We are in receipt of a letter from David Graubard, Esq. of this date.  Respondents raise four requests for modifications to the Order that we submitted to the Court last week.  Each is addressed below.

*First*, Respondents request that the Court modify two of its substantive bench rulings made at the conclusion of the evidentiary hearing so as to (i) reverse its contempt finding against Shimon Zaks and (ii) reverse its application of Fed. R. Civ. P. 70.  However, an objection to a proposed Order memorializing bench rulings already made by the Court is *not* the appropriate vehicle for reconsideration of those rulings.  While the Rules of Civil Procedure do not expressly allow motions for reconsideration, courts generally treat them as being filed under either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure (applicable in bankruptcy proceedings by Rules 9023 and 9024, respectively, of the Rules of Bankruptcy Procedure).  Rule 59 permits a "new trial" under certain circumstances and Rule 60(b) allows for "relief from a final judgment, order, or proceeding" in certain circumstances, however both are considered extraordinary remedies which will be granted only sparingly.  The salient point, however, is that a Rule 59 or Rule 60 motion (or an appeal) are the only appropriate remedies to challenge a ruling of the Court.  Therefore, we will fully address the substantive "issues" raised by Respondents, and cite applicable law if necessary, if and when such a motion is properly filed.[1]

---

[1] The "substantive arguments" made by Respondents are, in any event, misplaced and nonsensical.  With respect to the Court's finding of contempt against Shimon Zaks, Respondents argue (as they unsuccessfully did during the hearing) that, while Shimon Zaks admitted that he confronted persons entering the yeshiva to "advise" them about the "new location" of services, that does not constitute "harassment."  The Court, however, (i) indicated on the record that it did not consider Shimon Zaks' testimony to be credible, and (ii) considered the contrary testimony of Henoch Zaks, to establish clear and convincing evidence of the contemptuous conduct by Shimon Zaks.

**LEVINE & ASSOCIATES, P.C.**
**ATTORNEYS-AT-LAW**

**Hon. Robert D. Drain**
Page 2                                                                                                              April 13, 2022

*Secondly*, Respondents seek to have this Court modify the Court's specific ruling that use and occupancy charges are to be retroactively applied from April 2021 (when the Court dismissed the challenge to the transfer of the CRDI Property from Mosdos to CRDI)[2] so that the same are applied only from September 2021 when the Court issued its ruling on the First Enforcement Motion. Respondents argue that such modification from the Court's Bench Ruling be made because, it was not until the Court's September 8, 2021 Order, that "all doubt weas now removed." However, that "doubt" was whether any Constitutional or New York law right existed on the part of the Respondents *as a defense to their contempt of the Court's Injunction*. The existence of such doubt did not mean that Respondents had any right to occupy the CRDI Property *rent free*, it simply applied to whether their continued occupancy was not violative of the Injunction. Never *once* did

---

With respect to the Court's application of Rule 70, Respondents argue that the same violates New York law, and (ii) they purportedly received "no advance notice that the Movants would ask for relief under Rule 70(d)." Those are frivolous argument. With respect to the argument that New York's RPAPL somehow precludes this Court from exercising its power pursuant to Rule 70, not only is that argument not supported by a single judicial authority cited by Respondents, but it is simply dead wrong. With respect to that equally unavailing "lack of notice" argument, the Second Enforcement Motion itself specifically request an Order "directing that the United States Marshal's service physically remove [Respondents] from the CRDI Property." Similarly, in the Henoch Zaks declaration submitted in support of the motion [DE-???], the concluding paragraph (¶ 32) attempts to justify the request for such relief in the following manner:

> It is, I believe, obvious that neither this Court's prior contempt orders, nor the threat of future monetary sanctions, are going to force Rabbi Mayer and his family to comply with the existing prohibition against them coming onto the CRDI Property. Unless this Court makes it very clear to them that they will be physically removed from the CRDI Property by law enforcement officers for any future illegal entry onto the CRDI Property, they will continue to flaunt the judicial authority of this Court and the rights of CRDI and CCI.

It is, therefore, clear that (even if, *arguendo*, the repeated orders of this Court directing Respondents not to enter the CRDI Property was not adequate notice that the Court had the right to impose any enforcement mechanism it deemed appropriate, including physical removal from the CRDI Property), the Second Enforcement Motion itself, and the supporting declaration, made it abundantly clear that such relief was being sought. Indeed, at the conclusion of the hearing, Respondents' counsel argued (albeit erroneously, as he does here) that the Court did not have the power to direct the physical removal of Respondents from the CRDI Property. *Clearly*, Respondents were aware that such an order was being sought and was a potential outcome of the Second Enforcement Motion.

[2] The Court indicated that the portion of that award for the period June 2021 through April 2022 be deemed part of the remedial compensatory contempt sanctions awarded in this Order.

**LEVINE & ASSOCIATES, P.C.**
**ATTORNEYS-AT-LAW**

**Hon. Robert D. Drain**
Page 3                                                                                                           April 13, 2022

Respondents even argue (let alone present any evidence) that they were entitled to remain on the CRDI Property rent free, only that they had some imagined right to remain on the CRDI Property. Aside from the fact (as established above) that Respondents cannot, under the guise of contesting language in a proposed order, attempt to reargue the Court's Bench rulings, it was entirely appropriate for the Court to rule as it did, *to wit*, that use and occupancy charges commenced to run from April of 2021.

*Third*, Respondents argue that the Court's imposition of a modified version of its prior established coercive sanctions is erroneous because Mr. Graubard has "no recollection" that the Court awarded the same. Mr. Graubard is correct that the Court ruled that the imposition of the originally intended coercive sanctions of $5,000 per day would "cross the line" into an impermissible "penalty" area beyond the Court's jurisdiction (which I agreed with), the Court specifically ruled that, instead, it would reduce those sanctions to $5,000 *per month*. Indeed, it is accurate that the Court posed the question as to whether the imposition of retroactive use and occupancy would be a sufficient coercive sanction, but I argued that simply requiring a contemnor to do what it had the legal obligation to do was *not* an adequate coercive sanction for their prior contempt because all that did was let then remain on the property in violation of the Injunction and pay what they were required to pay in any event: fair market rental value. Indeed, apparently agreeing with that argument, the Court specifically stated that the coercive sanction would be in the amount of $5,000 *per month*, and, partially because of that award, the Court denied the request for attorneys' fees (which is normally granted as a matter of course where contempt is found). For that reason, we believe that the inclusion of the modified coercive sanctions award accurately reflected the Court's Bench Ruling and should remain intact in the written order to be issued by the Court.

*Fourth*, and finally, Respondents argue that the Court ruled that the 14 Cloverdale Lane house was a viable "alternative housing" facility and that such "ruling" was erroneous because (with no factual basis in the record *whatsoever*) "it would be illegal to use the guest wing for a permanent residence." That bizarre argument, aside from the fact that it is a post-hearing assertion *by counsel* with no competent proof being presented at the hearing at all in that regard,[3] is simply inaccurate. Aside from the fact that the was no such specific finding by the Court, the existence of alternative housing went to the "impossibility" defense, which Respondents did not attempt to establish *at all* (let alone by the high burden of proof they carried on that issue). It is a specious position, at best.

For the reasons stated above, it is respectfully urged that the Court forthwith issue the Order and Judgments as presented by Movants. The Court is well aware of its intention and rulings and there is no necessity for reference to the transcript for the Order and Judgments to be issued so as to

---

[3] Aside from the fact that a statement by an attorney without personal knowledge is worthless as a matter of law, it is difficult to understand how an attorney of Mr. Graubard's caliber and experience can, in good faith, make that argument knowing that it is dehors the record. Such a practice has repeatedly been rejected by the trial and appellate Courts in the Second Circuit (and everywhere for that matter) and, in many cases, is viewed as independently sanctionable conduct.

**LEVINE & ASSOCIATES, P.C.**
**ATTORNEYS-AT-LAW**

**Hon. Robert D. Drain**
**Page 4**                                                                                         **April 13, 2022**

commence the 14-day statutory stay period imposed by Bankruptcy Rule 7062.  As to Mr. Graubard's "offer" to speak with me to attempt to resolve our differing views on the issues he raised, I contacted him and we discussed the same but were unable to reach any common ground (even with respect to the indefensible arguments dehors the record.

                                            Respectfully,

                                            *Michael Levine*

                                            MICHAEL LEVINE

cc.     All counsel (via email)