# LEVINE & ASSOCIATES, P.C.
## ATTORNEYS-AT-LAW

**15 Barclay Road**
**Scarsdale, New York 10583-2707**
**e-mail: ml@LevLaw.org**
**Fax (914) 725-4778**
**Telephone (914) 600-4288**

June 22, 2022

**Via ECF and email**

Hon. Robert D. Drain
U.S. Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601-4140

*RE: In re Mosdos Chofetz Chaim (21-7023)*

Dear Judge Drain:

Regrettably, I need to address the Court yet again regarding what appears to be the ongoing gamesmanship with respect to the bonds that the Contemnors in the above-referenced adversary proceeding appear to be engaging in. As your Honor will recall, in your order of June 3, 2022 [DE-246, the "Conditional Stay Order"], you granted a conditional stay of your April 14, 2022 Second Enforcement Order [DE-198] provided that the Contemnors commenced the payment of use and occupancy to CRDI, and pay the coercive sanctions to the Clerk of the Court, by June 8, 2022, or submit a bond securing those payments to the entity to which they were due by the same deadline.

The Contemnors failed to make those payments, or to deliver the required bonds, by the June 8, 2022 deadline. On June 10, 2022, CRDI submitted an attorney's declaration attesting to that fact and requesting that the Court immediately vacate the Conditional Stay Order. The same day, Daniel S. Alter, Esq., counsel for the Contemnors, sent an email to the Court (at 12:32 pm) asserting (albeit erroneously) that the Conditional Stay Order included a "three day grace period" which extended the Contemnors' time to make the payments or deliver the required bonds through June 11, 2022. At 5:34 pm on June 10, 2022, Mr. Alter sent an email to the Court representing that he had filed a declaration "demonstrating that the stay movants have secured appeal bonds to cover their use and occupancy charges as well as any incurred coercive sanctions for the period ending August 1, 2022." In that declaration, Mr. Alter further represented that he attached thereto bonds issued "in favor of Congregation Radin Development Inc. ('CRDI Bond') and the Clerk of the United States Bankruptcy Court for the Southern District od New York ('Clerk's Bond')."

Upon reviewing the purported bonds, however, it was painfully obvious that Mr. Alter's representations were inaccurate and the purported "bonds" worthless because, as I pointed out in my email to the Court of June 10, 2022 (5:48 pm), they "purport to obligate the bonding company to 'Mosdos Chofetz Chain Inc. and Congregants of Mosdos Chofetz Chaim Inc. a/k/a Kiryas Radin.' The bonds need to state that the bonding company will pay directly to CRDI the amount

**LEVINE & ASSOCIATES, P.C.**
**Attorneys-at-Law**

**Hon. Robert D. Drain**
**Page 2**                                                                                                    **June 22, 2022**

due for use and occupancy upon an affirmance on appeal. This is a very unfunny joke. We repeat our request that this Court issue the Default Order that we previously submitted."

Mr. Alter responded to that by way of his email of June 10, 2022 (7:08 pm). After accusing me of having a "vexatious attitude and approach," and representing that he had "specifically directed the bonding company to issue [the bonds] in favor of CRDI and the Clerk of Court," he condescendingly indicated that he was "fully willing to discuss reasonable amendments that address a valid request for clarification." I responded to that in my e-mail of June 10, 2022 (7:42 pm) by asking the hypothetical question "[s]o, Mr. Alter did not see that his purported instructions to the bonding company were not followed before he sent this useless piece of paper to the Court?" This Court had a similar reaction, ruling in its email of 7:35 pm that day, that:

> The bond is not in favor of CRDI. The order terminating the stay will be entered on Monday if this is not changed to conform to my stay order, which was absolutely clear on this point. To have obtained the bond in favor of entities that the appellants have claimed they control is a willful and bad faith breach of the stay order.

Mr. Alter responded at 8:53 pm that day, representing that he "personally instructed the surety's agent to issue two bonds — one specifically in favor of CRDI and one specifically in favor of the Clerk of Court. Despite that instruction, a copy of which I can provide to the Court on Monday, the surety delivered the bonds in their present form." He argued (incredibly) that "the Stay Movants' good faith is manifest," and attributed the "error" in the bonds to "an inadvertent scrivener's error, which was beyond the Stay Movant's control." This Court immediately saw through that pretense in its responding email of June 11, 2022 (9:54 pm), asking "[h]ow would the surety even know the names of the obviously incorrect beneficiaries of the bond unless told them by your clients? Get it fixed by the close of business on Monday."[1]

On June 13, 2022, Mr. Alter sent an email to the Court (at 10:14 am), representing that the "underwriter for the bonds was notified of the error first thing this morning and was requested to correct the matter as quickly as possible. As soon as the corrected documents are issued today, we notify the Court and deliver them accordingly."[2] On June 13, 2022 (at 12:26 pm), this Court

---

[1] Mr. Alter never responded to the Court's inquiry as to how the bonding company could have possible known the names of the obviously incorrect beneficiaries.

[2] At 10:39 am that day, Mr. Alter submitted "excerpts" from a prior e-mail chain, and (after again accusing me of "pressing" "vexatious charges" and making "baseless and unprofessional accusations") he represented that "Larry Blisko [was] the agent for the bonding company" and that his attached emails purportedly established that the bonding company was, therefore, "instructed … to make the bonds in favor of CRDI and the Clerk of the Court." After reviewing those e-mails, however, I emailed the Court (at 11:11 am) and pointed out that (i) the first of the "excerpts" Mr. Alter provided was dated June 9, 2022 – the day *after* the Stay Order required the bond to be posted; (ii) the communications from Mr. Alter were to Mark Blisko's cousin (an insurance broker with LHB Insurance Brokerage), *not* to the bonding company; (iii) therefore, the representation in Mr. Alter's June 10, 2022 (7:08 pm) email to the Court that he "specifically directed *the bonding*

## LEVINE & ASSOCIATES, P.C.
### ATTORNEYS-AT-LAW

**Hon. Robert D. Drain**
**Page 3**                                                                                                    **June 22, 2022**

advised Mr. Alter that "[t]he key thing is to have the correct bond in favor of Congregation Radin Development posted today."

At 3:16 pm on June 13, 202, Mr. Alter sent an email to this Court attaching a copy of a declaration that he ECF-filed [DE-249] and which annexing copies of what he referred to as the "corrected appeal bonds." In that declaration, Mr. Alter represented that the Contemnors "will promptly forward to CRDI and the Clerk of the Court the original bond documentation when they receive it from the surety. That documentation is expected to arrive within a week." [Alter Declaration, ¶ 5].[3]

Not unexpectedly, that week (plus another two days) has now come and gone and neither CRDI nor the Court Clerk has received the original bond documents. Simply put, the Contemnors have emphatically *not* "posted" the bonds (which "posting" is not completed until originals of the bonds are delivered to the beneficiaries of the same). Neither CRDI nor the Clerk of the Court has **any** protection at this point since copies of documents attached to an attorney's certification are neither enforceable nor irrevocable.

It is now *two weeks* beyond the June 8, 2022 deadline for the Contemnors to have posted the required bonds and the bonds are *still* not posted (i.e., the originals, assuming that they even exist,

---

*company* to issue the bonds in favor of CRDI and the Clerk of Court" (emphasis added) was completely inaccurate; and (iv) in his June 11, 2022 e-mail, Mr. Alter also misrepresented that he "personally instructed the surety's agent to issue two bonds," when the surety's "agent" was Valerie Aber, *not* Mark Blisko's cousin. Mr. Alter never responded to those observations.

[3] The Southern District requires the filing of an *original* bond, which means it has to be presented to the Orders and Judgments Clerk to have it filed before it becomes effective. Until the original bonds are received by, respectively, CRDI and the Court Clerk, all that we have is (again) worthless pieces of paper attached or an attorney's declaration. The Contemnors can direct that the same be changed, or the bonding company can entirely cancel the same, at *any time* before the originals are actually delivered to the beneficiaries. That is why Mr. Alter represented that the originals would be delivered. Why that would take a week (rather than being sent via overnight delivery) is inexplicable. But that cavalier attitude is consistent with Rabbi Mayer's apparent view throughout that he can do what he wants, when he wants, in whatever manner he wants, regardless of Court orders, directions, or explanations of consequences for noncompliance.

## LEVINE & ASSOCIATES, P.C.
### ATTORNEYS-AT-LAW

**Hon. Robert D. Drain**
**Page 4**                                                                                                   **June 22, 2022**

have not been delivered).[4]  At this point, we believe that it is appropriate for this Court to issue the previously submitted order vacating the stay as a result of the contemnors repeated (and, we submit, intentional) noncompliance with the conditions of the stay.

Thank you for your attention.

Very truly yours,

s/ *Michael Levine*

MICHAEL LEVINE

cc. All counsel (via email)

---

[4] The statement regarding the existence, or lack thereof, of the original bonds, is not meant to be facetious.  We did not raise this issue when Mr. Alter filed his June 13, 2022 declaration (because we assumed that we would receive the original bond "within a week") however, our prior examination of the "corrected bonds" raised some suspicion as to their validity.  The first tendered bond regarding the funds owed to CRDI (which was annexed to Mr. Alter's June 10, 2022 Declaration) was dated and notarized on June 10, 2022.  For ease of reference, a copy of that first bond is annexed to this letter and labeled Exhibit "1".  After our protest that the beneficiary of the same was not CRDI, and this Court directed Contemnors (on June 11, 2022) to file a corrected bond by June 13, 2022. Mr. Alter sent an email on June 13, 2022 (at 10:14 am) representing that "the underwriter for the bonds was notified of the error *first thing this morning* and was requested to correct the matter as quickly as possible.  As soon as the corrected bonds are issued *today*, we notify (sic) the Court and deliver them accordingly."  Thus, it is *impossible* that the "corrected" bonds could have been issued before June 13, 2022, because the request to do so had not yet been made.  Yet, when Mr. Alter attached to his June 13, 2022 Declaration a copy of the "corrected" bond in favor of CRDI (a copy of which is annexed to this letter and labeled Exhibit "2"), the same purported to be signed and notarized *on June 10, 2022 – **three days before it could have possibly been issued, signed or notarized***.  In fact, comparing the two bonds, ***the signatures and notarizations on each appear to be exact reproductions of each other***.  In other words, it appears *clearl*y from the face of the bonds that someone printed out the middle section (containing the beneficiary information and condition of payment) of what now is claimed to be the "corrected bond" on a sheet of paper, pasted it over the same section of the first bond (note how the text is slightly to the left of the other printed material), and photocopied the first bond so that it appeared as if the new language was part of the "corrected bond."  Moreover, the signatures of Valerie Aber on the first page of each bond are identical (i.e., she clearly did *not* resign the "corrected bond"), and the notarization page (the next page) is also *exactly* the same on each bond version (including the notary's signature and the ten degree right tilt to the notary stamp.  The third page of each are also identical to each other.

   While, as indicated, we did not raise that issue at the time Mr. Alter filed his June 13, 2022 Declaration on the assumption that our receipt of the original "corrected bond" containing original signatures would alleviate the concerns raised by the above-described anomalies, have now *not* received the same in the time represented by Mr. Alter, and those concerns are, consequently, even more worrisome.