**Michael Levine, Esq.**
**LEVINE & ASSOCIATES, P.C.**
15 Barclay Road
Scarsdale, New York 10583
Telephone (212) 608-4702
e-mail: ml@LevLaw.org

**Tracy L. Klestadt, Esq.**
**Brendan Scott, Esq.**
**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone (212) 221-5700
e-mail: tklestadt@klestadt.com; bscott@Klestadt.com

*co-counsel for Defendant Congregation Radin Development, Inc.*

Hearing Date [Via ZoomGov]: June 28, 2022

Hearing Time: 10:00 am EST

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In re: | : Chapter 11 |
| **MOSDOS CHOFETZ CHAIM INC.,** | Case No. 12-23616-rdd |
| | : Post-Confirmation |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**CONGREGANTS OF MOSDOS CHOFETZ CHAIM INC.
A/K/A KIRYAS RADIN,**                                              : Adv. Pro. No. 21-07023-rdd

                                     Plaintiff,
                 - against –                                            :

**MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC.,:
TBG RADIN LLC, SHEM OLAM, LLC, CONGREGATION
RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE  :
WALDMAN ZAKS, MENDEL ZAKS, GITTEL ZAKS
LAYOSH, ELIYAHU LAYOSH, SAMUEL MARKOWITZ,   :
DEBORAH ZAKS HILLMAN, YOM T. HENIG, STEVEN
GREEN, DANIEL GREEN, ABRAHAM ZAKS and STERLING  :
NATIONAL BANK,**
                                     **Defendants.**           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MOTION BY CONGREGATION RADIN DEVELOPMENT INC. FOR VACATUR
OF THE COURT'S PRIOR JUNE 3, 2022 CONDITIONAL STAY ORDER**

**TO: THE HON. ROBERT D. DRAIN, U.S. BANKRUPTCY JUDGE**

The application of Defendant Congregation Radin Development Inc. ("CRDI"), by its undersigned counsel, respectfully shows and represents:

1. On April 14, 2022, this Court issued an Order and Judgment [DE-198] which, *inter alia*, required Rabbi Mayer Zaks, Sima Zaks Weintraub, Shimon Zaks, Nachum Z. Brody, Yisroel Hochman, and Faigy Hochman (collectively, "Contemnors") to deliver possession of certain property owned by CRDI which the Contemnors were then occupying [the "Second Enforcement Order"].

2. On May 17, 2022, the Contemnors moved this Court for an order, *inter alia*, staying the Second Enforcement Order [DE-231 through DE-237] pending appeal of the Second Enforcement Order (the "Stay Motion").

3. On June 3, 2022, this Court issued an order [DE-246] temporarily staying, on certain conditions, that portion of the Second Enforcement Order as directed Movants and any person acting in concert with any of them to turn over and vacate certain living units located on property owned by CRDI by June 15, 2022 (the "Conditional Stay Order").

4. The conditions imposed by the Court included that, beginning by 5:00 p.m. on June 8, 2022 (and continuing monthly thereafter), (i) Rabbi Mayer Zaks, Sima Zaks Weintraub and Shimon Zaks collectively pay to CRDI $5,350.00, (ii) Nachum Z. Brody pay to CRDI $5,350.00, (iii) Yisroel and Faigy Hochman collectively pay to CRDI $3,375.00, and (iv) each of the Contemnors pay to the Clerk of the Court the sum of $5,000.00 (collectively, the "Required Payments"), or that the Contemnors otherwise file bonds in forms acceptable to the Court securing payment of the Required Payments (the "Bonds").

5. The Conditional Stay Order further directed that, if any of the Required Payments were not received or the Bonds not posted (i.e., filed with the Court and the originals of the same delivered to the beneficiary thereunder) by 5:00 p.m. on June 8, 2022, counsel for CRDI file with the Court and serve on counsel for the Movants a certification that the Required Payments were not timely received or bonded (the "Default Certification").

6. On June 9, 2022, co-counsel for CRDI filed the Default Certification [DE-247] attesting to the fact that none of the Required Payments was made, nor any of the Bonds delivered, by any of the Contemnors by 5:00 pm on June 8, 2022, and requesting that an Order vacating the temporary stay imposed by the Conditional Stay Order be vacated (the "Proposed Vacatur Order").

7. On The same day (June 9, 2022), one of the attorneys for the Contemnors, Daniel S. Alter, Esq., sent an email to the Court (at 12:32 pm) asserting (albeit erroneously) that the Conditional Stay Order included a "three day grace period" which purportedly extended the Contemnors' time to make the Required Payments or deliver the required Bonds through June 11, 2022.

8. At 5:34 pm on June 10, 2022, Mr. Alter sent an email to the Court representing that he had filed a declaration "demonstrating that the stay movants [i.e., the Contemnors] have secured appeal bonds to cover their use and occupancy charges as well as any incurred coercive sanctions for the period ending August 1, 2022." In that declaration, Mr. Alter further represented that he attached thereto copies of bonds issued "in favor of Congregation Radin Development Inc. ('CRDI Bond') and the Clerk of the United States Bankruptcy Court for the Southern District of New York ('Clerk's Bond')."

9. Upon reviewing the purported bonds, however, it was painfully obvious that the purported "bonds" were worthless because (i) the same purported to obligate the bonding company

to "Mosdos Chofetz Chain Inc. and Congregants of Mosdos Chofetz Chaim Inc. a/k/a Kiryas Radin" (and not to CRDI or the Clerk of the Court), and (ii) the same did not state that the bonding company would pay directly to CRDI the amount due for use and occupancy, or to the Clerk of the Court for the coercive sanctions, upon an affirmance on appeal.

10. On June 10, 2022 (at 5:48 pm), co-counsel for CRDI pointed that out to the Court and repeated CRDI's request that this Court issue the Proposed Vacatur Order. Mr. Alter responded to that at 7:08 pm that day, representing that he had "specifically directed the bonding company to issue [the bonds] in favor of CRDI and the Clerk of Court," indicating that he was "willing to discuss reasonable amendments that address a valid request for clarification."

11. This Court then issued the following ruling (in its email of 7:35 pm that day):

> The bond is not in favor of CRDI. The order terminating the stay will be entered on Monday if this is not changed to conform to my stay order, which was absolutely clear on this point. To have obtained the bond in favor of entities that the appellants have claimed they control is a willful and bad faith breach of the stay order.

12. Mr. Alter responded at 8:53 pm that day, representing that he "personally instructed the surety's agent to issue two bonds – one specifically in favor of CRDI and one specifically in favor of the Clerk of Court. Despite that instruction, a copy of which I can provide to the Court on Monday, the surety delivered the bonds in their present form." He argued (incredibly) that "the Stay Movants' good faith is manifest," and attributed the "error" in the purported bonds to "an inadvertent scrivener's error, which was beyond the Stay Movant's control."

13. On June 11, 2022 (9:54 pm), this Court immediately saw through that pretense, asking "[h]ow would the surety even know the names of the obviously incorrect beneficiaries of the bond unless told them by your clients? Get it fixed by the close of business on Monday." Mr. Alter did not respond to the Court's question. Instead, on June 13, 2022, Mr. Alter sent an email to the Court (at 10:14 am), representing that the "underwriter for the bonds was notified of the error *first*

*thing this morning* [i.e., on June 13th] and was requested to correct the matter as quickly as possible.[1] As soon as the corrected documents are issued today, we notify the Court and deliver them accordingly." At 12:26 pm that day, this Court advised Mr. Alter that "[t]he key thing is to have the correct bond in favor of Congregation Radin Development posted today."

14. At 3:16 pm on June 13, 2022, Mr. Alter sent an email to this Court attaching a copy of a declaration that he had ECF-filed [DE-249] and which included annexed copies of what he referred to as the "corrected appeal bonds."[2] In that declaration, Mr. Alter represented that the

---

[1] In fact, in a series of "excerpts" from prior emails that Mr. Alter thereafter presented to the Court on June 13, 2022, which he contended established that *the bonding company* was "instructed … to make the bonds in favor of CRDI and the Clerk of the Court," it became obvious that the Contemnors never intended to timely comply with the Conditional Stay Order, and Mr. Alter's prior representations were, at best, suspect. That is because (i) the first of the "excerpts" Mr. Alter provided was dated June 9, 2022 – the day *after* the Stay Order required the bond to be posted; (ii) the communications from Mr. Alter were to Mark Blisko's cousin (an insurance broker with LHB Insurance Brokerage), *not* to the bonding company (meaning that Mr. Alter's June 10, 2022 (7:08 pm) representation to the Court that he "specifically directed *the bonding company* to issue the bonds in favor of CRDI and the Clerk of Court" (emphasis added) was completely inaccurate); and (iii) Mr. Alter further misrepresented that he "personally instructed *the surety's agent* to issue two bonds" (emphasis added), when the surety's "agent" was Valerie Aber, not Mark Blisko's cousin. Co-counsel for CRDI pointed that all out to the Court in an email of June 131, 2022 (11:11 am) on which Mr. Alter was copied. Mr. Alter never responded to any of the above issues.

[2] Whether the purported "corrected appeal bonds" are legitimate is extremely suspect for several reasons, aside from the fact that the originals of the same (if they exist) have not been delivered. The first tendered bond regarding the funds owed to CRDI (which was annexed to Mr. Alter's June 10, 2022 Declaration) was dated and notarized on June 10, 2022. For ease of reference, a copy of that first bond is annexed to this letter and labeled Exhibit "1". After CRDI's protest that the beneficiary of the same was not CRDI, and after this Court directed Contemnors (on June 11, 2022) to file a corrected bond by June 13, 2022, Mr. Alter sent an email on June 13, 2022 (at 10:14 am) representing that "the underwriter for the bonds was notified of the error *first thing this morning* and was requested to correct the matter as quickly as possible. As soon as the corrected bonds are issued *today*, we notify (sic) the Court and deliver them accordingly" (emphasis added). Thus, it is *impossible* that the "corrected" bonds could have been issued before June 13, 2022, because the request to do so had not yet been made. Yet, when Mr. Alter attached to his June 13, 2022 Declaration a copy of the purported "corrected" bond in favor of CRDI (a copy of which is annexed hereto and labeled Exhibit "2"), the same purported to be signed and notarized *on June 10, 2022 – **three days before it could have possibly been issued, signed or notarized***. In fact, comparing the two bonds (Exhibits 1 and 2), ***the signatures and notarizations on each appear to be exact reproductions of each other and each contains the same bond number***. In other words,

Contemnors "will promptly forward to CRDI and the Clerk of the Court the original bond documentation when they receive it from the surety. That documentation is expected to arrive within a week." [Alter Declaration, ¶ 5].

15. That week (plus another two days) came and went and neither CRDI nor the Court Clerk received the original bond documents. Simply put, the Contemnors did *not* "post" the required Bonds (which "posting" is not completed until originals of the bonds are delivered to the beneficiaries of the same) by June 13, 2022. Therefore, neither CRDI nor the Clerk of the Court had any security for the Required Payments since copies of documents attached to an attorney's certification are neither enforceable nor irrevocable.

16. On June 21, 2022 (two weeks beyond the June 8, 2022 deadline imposed by the Conditional Stay Order for the Contemnors to have posted the required bonds, and two days past the June 20, 2022 date that Mr. Alter represented (in his June 13, 2022 declaration) the originals of the purported "corrected bonds" would be delivered to CRDI and the Clerk of the Court, co-counsel wrote to the Court, pointing out the above defaults, and requesting, once again, that the Court issue the Proposed Vacatur Order.

17. On June 23, 2022 (at 8:55 am), this Court issued a direction to Mr. Alter that someone in his firm "should ensure the physical delivery of the bonds today or report to the court by email

---

it appears *clearly* from the face of the bonds that someone prepared and printed out the middle section (containing the beneficiary information and condition of payment) of what now is claimed to be the "corrected bond" on a sheet of paper, pasted it over the same section of the first bond (note how the text is slightly to the left of the other printed material), and photocopied the first bond so that it appeared as if the new language was part of the "corrected bond." Moreover, the signatures of Valerie Aber on the first page of each bond are <u>identical</u> (i.e., she clearly did *not* re-sign the purported "corrected bond"), and the notarization page (the next page) is also *exactly* the same on each bond version (including the notary's signature and the ten degree right tilt to the notary stamp. Obviously, the notary could not have notarized a signature on June 10th that could not have possible be made until June 13th. Similarly, the third page of each of the bonds are also <u>identical</u> to each other (and each also professes to have been signed on June 10th, not June 13th).

today with an explanation of why they have not been delivered to the Clerk of the Court and CRDI." The Court's said direction also stated that CRDI's counsel "can schedule and serve notice of a hearing on CRDI's motion to vacate the stay order for June 28." While, assumedly, the Court's reference to CRDI's motion to vacate was with respect to the e-mail and letter applications for the same previously ECF-filed and/or sent directly to the Court (all of which was copied to Mr. Alter and several other members of his firm), the instant formal motion (together with a companion motion for an expedited hearing on the same) is being filed so that no future procedural objection is made by the Contemnors.

18. The facts and circumstances outlined above establish, it is respectfully submitted, that (i) the Contemnors are in *de facto* violation of the conditions imposed in the Conditional Stay Order, and have been since June 8, 2022, and (ii) the Contemnors' repeated defaults were willful or, at the very least, a gross disregard of their obligations pursuant to the Conditional Stay Order. At this point, the Court having given the Contemnors *every possible* opportunity to cure their defaults, CRDI believes that it is appropriate for this Court to issue the previously submitted Proposed Vacatur Order vacating the stay as a result of the contemnors repeated (and, we submit, intentional) noncompliance with the conditions of the stay imposed thereby.

**WHEREFORE**, Defendant CRDI respectfully requests that this Court issue the Proposed Vacatur Order and award to CRDI such other, further and different relief as may be appropriate.

Dated: June 23, 2022

                                        **LEVINE & ASSOCIATES, P.C.**
                                        By: s/*Michael Levine*
                                                Michael Levine, Esq.
                                        15 Barclay Road
                                        Scarsdale, New York 10583
                                        Telephone (212) 608-4702
                                        e-mail: ml@LevLaw.org

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: s/*Tracy L. Klestadt*
      Tracy L. Klestadt, Esq.
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone (212) 221-5700
e-mail: tklestadt@klestadt.com

*co-counsel for Defendant*
*Congregation Radin Development*