**Michael Levine, Esq.**
**LEVINE & ASSOCIATES, P.C.**
15 Barclay Road
Scarsdale, New York 10583
Telephone (212) 608-4702
e-mail: ml@LevLaw.org

**Tracy L. Klestadt, Esq.**
**Brendan Scott, Esq.**
**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone (212) 221-5700
e-mail: tklestadt@klestadt.com; bscott@Klestadt.com

*co-counsel for Defendant Congregation Radin Development, Inc.*

| Hearing Date [Via ZoomGov]: June 28, 2022 |
| Hearing Time: 10:00 am EST |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re:                                                                    : Chapter 11

**MOSDOS CHOFETZ CHAIM INC.,**                            Case No. 12-23616-rdd
                                                                          : Post-Confirmation
                         Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**CONGREGANTS OF MOSDOS CHOFETZ CHAIM INC.**
**A/K/A KIRYAS RADIN,**                                           : Adv. Pro. No. 21-07023-rdd

                         Plaintiff,
            - against –                                                   :

**MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC.,:**
**TBG RADIN LLC, SHEM OLAM, LLC, CONGREGATION**
**RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE :**
**WALDMAN ZAKS, MENDEL ZAKS, GITTEL ZAKS**
**LAYOSH, ELIYAHU LAYOSH, SAMUEL MARKOWITZ,  :**
**DEBORAH ZAKS HILLMAN, YOM T. HENIG, STEVEN**
**GREEN, DANIEL GREEN, ABRAHAM ZAKS and STERLING  :**
**NATIONAL BANK,**
                         Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**CONGREGATION RADIN DEVELOPMENT INC.'S REPLY**
<u>**ON ITS MOTION FOR VACATUR OF CONDITIONAL STAY ORDER**</u>

Congregation Radin Development Inc., replying to the Opposition Declaration of Daniel S. Alter, Esq., respectfully sets forth as follows:

1. There is really no dispute as the applicable facts here; only as to the appropriate remedy for the Contemnors repeated failure to comply with this Court's June 3, 2022 order (the "Conditional Stay Order") staying its Second Enforcement Order [DE-198] pending appeal.

2. In that regard, there is no question that this Court's June 3, 2022 Conditional Stay Order imposed certain clear and unambiguous conditions to the staying of the Second Enforcement Order. There is also no question that those conditions included that, beginning by 5:00 p.m. on June 8, 2022 (and continuing monthly thereafter), (i) Rabbi Mayer Zaks, Sima Zaks Weintraub and Shimon Zaks collectively pay to CRDI $5,350.00, (ii) Nachum Z. Brody pay to CRDI $5,350.00, (iii) Yisroel and Faigy Hochman collectively pay to CRDI $3,375.00, and (iv) each of the Contemnors pay to the Clerk of the Court the sum of $5,000.00 (collectively, the "Required Payments"), or that the Contemnors otherwise file bonds in forms acceptable to the Court securing payment of the Required Payments (the "Bonds").

3. There is also no question that *none* of the Contemnors timely complied with those conditions. They did not make any of the Required Payments, and they did not post any of the required bonds, by the June 8, 2022 deadline.

4. On June 9, 2022 – the day after they defaulted on the Conditional Stay Order – the Contemnors (through counsel) asserted (albeit erroneously) that it was their "understanding" that the Conditional Stay Order contained a three-day "grace period" for compliance and that they would make the Required Payments or deliver the required Bonds by June 11, 2022. That representation proved erroneous.

5. On June 10, 2022, the Contemnors (through counsel) represented that they had "secured" appeal bonds "in favor of Congregation Radin Development Inc. … and the Clerk of the … Court … to cover their use and occupancy charges as well as any incurred coercive sanctions for the period ending August 1, 2022." That representation also proved false in two regards. First, Contemnors had not "obtained" any bond at all (only a photocopy of a proposed bond). Secondly, the beneficiaries under the purported bonds were *not* CRDI or the Clerk of the Court but rather Rabbi Mayer Zaks (and an entity he claimed to control). Additionally, the bonds did not contain any language as to the circumstances under which the funds being secured would be released.

6. That violation of the Court's Conditional Stay Order was represented by the Contemnors (through counsel) to have been a result of a misunderstanding by the bonding company of instructions given top it by contemnors' counsel. That representation also proved false because (i) Contemnors' counsel *never* communicated directly with the bonding company *at all*, and (ii) the bonding company could not have known who the beneficiaries were unless it received the same from the Contemnors.

7. On June 13, 2022, the Contemnors (through counsel) represented to the Court that the "underwriter for the bonds was notified of the error first thing this morning [i.e., on June 13th] and was requested to correct the matter as quickly as possible. As soon as the corrected documents are issued today, we [will] … deliver them accordingly." That representation proved false because counsel for the Contemnors never communicated with the "underwriter " of the bonds at all, but rather communicated only with Mark Blisko's cousin, an independent insurance broker.

8. Later on June 13, 2022, the Contemnors represented (again, through counsel) that they had "obtained" purported "corrected appeal bonds" and that they would "promptly forward to CRDI and the Clerk of the Court the original bond documentation … within a week." That

3

representation proved false, since the original bonds had neither been "obtained" nor were the originals delivered by the end of that one-week period.

9. On June 23, 2022, the Contemnors (through counsel) attempted to justify their prior erroneous representation by claiming that yet another "miscommunication" had occurred between their counsel and the bonding company. This time, it took the form of counsel's assertion that" "I am advised that the bonding company held the documentation waiting for confirmation that the Court was satisfied with its form. Unfortunately, they did not inform our office that they were doing so."

10. On June 23, 2022, this Court directed that the Contemnors "should ensure the physical delivery of the bonds today …" No such delivery was made. Instead, the Contemnors' counsel advised the Court that the original bonds were then being sent to counsel for the first time that day.

11. On June 27, 2022, the Contemnors (in a declaration submitted by counsel under the penalty of perjury) represented that "the Mr. Klestadt (CRDI's Bankruptcy attorney) "had the original bond within forty-eight hours" [Alter Declaration, ¶ 12]. That representation proved to be false as well, and, when confronted with that falsity, the Contemnors' counsel "apologize[d] for the incorrect statement contained in my declaration (for which I am embarrassed) regarding the delivery status of the bonds."

12. Now, in the face of the Contemnors' *repeated* violations of the conditions to the continuation of the stay, and their multiple misrepresentations, excuses and apologies, they present two thumb worn pages from their playbook: (i) the "no harm, no foul" defense, and (ii) the "sorry, we misunderstood the order" excuse. Neither should compel this Court to, once again, overlook their transgressions.

13. First, Contemnors claim that the motion to vacate the stay is now "moot" because they have supposedly now delivered the originals of the required bonds. Citing *Barclay v. Hughes*, 462 F.Supp.2d 314 (D. Conn. 2006), they do not address any of the documented and irrefutable prior violations of the conditions of the stay, arguing rather that they all go away when the bond is posted. However, the *Barclay* case involved plaintiff's § 1983 claim of First Amendment retaliation and defendant's contention that the court lacked personal jurisdiction over the defendant to adjudicate that claim. The "bond" issue did not involve a supersedeas bond to secure a monetary judgment, but rather was for a $500 bond for security for costs pursuant to Connecticut Local Rule 83.3.[1] Unlike in the matter at bar, the bond in *Barclay* was *not* required by any Court Order, and was not required as a *condition* of a stay.

14. It is not surprising that the Contemnors cited *only* an inapplicable 2006 Connecticut case to "support" their "mootness" argument, as there are no even remotely similar cases that we

---

[1] Local Rule 83.3 of the Local Rules for the United States District Court for the District of Connecticut provides:

> (a) Security for Costs. Any time after the commencement of an action, the defendants, or the plaintiffs upon the filing of a counterclaim, are entitled on request to the Clerk to an order to be entered by the Clerk, as of course, for a cash deposit or bond with recognized corporate surety in the sum of $500.00 as security for costs, to be given within thirty days from the entry of such order. Parties who are jointly represented by the same counsel will be deemed to be one party for the purposes of this $500 limitation. Additional, substituted, or reduced security, or a justification of financial responsibility by any surety, may be ordered by the Court at any time during the pendency of the action for good cause found by the Court. Noncompliance with an order entered hereunder may be grounds for summary dismissal or default upon application by a party and notice to the non-complying party.

Under that local rule, the Clerk of the court (not the Court itself) issues a minute order directing the filing of the bond.

5

could find in either the Southern District of New York, or in the Second Circuit. Here, clear and expressed conditions were directed by the Court and not timely complied with by the Contemnors.[2]

15. Secondly, the Contemnors resurrect another of their previously employed strategies, *to wit*, that the Order was purportedly not clear enough for them to comply with. Specifically, they argue that the condition of posting a bond acceptable to the Court was not clear enough for them to understand that the originals of the same had to be delivered to the beneficiaries in order for the bond to be effective. But their own submissions to the Court (representing that the *originals* would be delivered to the beneficiaries) *before* the Court made any "emailed instruction" to that effect, belies that contention.

16. The Conditional Stay order was crystal clear that a bond – sufficient to secure the judgments to the beneficiaries of use and occupancy and coercive contempt sanctions – had to be tendered. Contemnors' original attempt to circumvent that by "unwittingly" pointing to copies of

---

[2] The Contemnors' citation to *O'Connor v. Bd. Of Ed. of Sch. Dist. 23*, 449 U.S. 1301 (1980), to stand for the proposition that "harm to the moving party is essential to vacating a stay" is similarly incorrect. There is no such holding in that case. Instead, in that case (a gender discrimination case), Justice Stevens ruled that "I am persuaded that the District Court was correct in concluding that, if [Plaintiff] will probably succeed on the merits, she would suffer greater harm than would the defendants by allowing her to try out for the boys' teams. I am therefore persuaded that the stay can only be supported by the sufficiency of the defendants' showing that there is an adequate reason for discriminating against Karen because of her sex." There is nothing in the decision that even remotely stands for the proposition that harm must be established in order to vacate a stay, especially where, as here, the reason for the vacatur is the failure of the party in whose benefit the stay was issued fails to comply with the conditions of the same.

But even if respective harm to the parties is to be taken into account, there is no potential harm to the Contemnors. Annexed hereto as Exhibit "1" is a copy of an unrebutted declaration from Henoch Zaks that was submitted in the Second Circuit in connection with the Contemnors co-pending application for a stay from that Court describing CRDI's ongoing damages. Also attached as Exhibit "2" is a print out from Community Connections evidencing that rentals in Spring Valley are readily available. The third from the bottom listing is for a location approximately 500 feet from the location where the Contemnors represent they are presently praying.

6

bonds payable to Rabbi Mayer and the entity he claims to control, and their subsequent contention that they "unwittingly" failed to deliver originals of the bonds to the beneficiaries – all because they did not understand the terms of the Conditional Stay Order – simply lacks credibility.

17. While it is one thing to admit that an Order has not been complied with, and ask the Court to grant *nunc pro tunc* relief, it is quite another to, as the Contemnors do here, contend that "there was no violation of the Stay order here." [Alter Declaration, ¶ 18]. That assertion, in view of the history of noncompliance and inane excuses, is preposterous.

**WHEREFORE**, for the reasons set forth in CRDI's original motion papers and herein, it is respectfully requested that this Court issue the Proposed Vacatur Order and award to CRDI such other, further and different relief as may be appropriate.

Dated: June 27, 2022

**LEVINE & ASSOCIATES, P.C.**
By: s/*Michael Levine*
      Michael Levine, Esq.
15 Barclay Road
Scarsdale, New York 10583
Telephone (212) 608-4702
e-mail: ml@LevLaw.org

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: s/*Tracy L. Klestadt*
      Tracy L. Klestadt, Esq.
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone (212) 221-5700
e-mail: tklestadt@klestadt.com

*co-counsel for Defendant*
*Congregation Radin Development*