**CORRECTED COPY**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>MOSDOS CHOFETZ CHAIM INC.,<br><br>                                                   Debtor. | Chapter 11 – Post Confirmation<br><br>Case No. 12-23616(SHL) |
| CONGREGANTS OF MOSDOS CHOFETZ CHAIM INC. A/K/A KIRYAS RADIN,<br><br>                                                   Plaintiffs,<br><br>            -against-<br><br>MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC., TBG RADIN LLC, SHEM OLAM, LLC, CONGREGATION RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE WALDMAN ZAKS, MENDEL ZAKS, GITTEL ZAKS LAYOSH, ELIYAHU LAYOSH, SAMUEL MARKOWITZ, DEBORAH ZAKZ HILLMAN, YOM T. HENIG, STEPHEN GREEN, DANIEL GREEN, ABRAHAM ZAKS and STERLING NATIONAL BANK,<br><br>                                                   Defendants. | Adv. Proc. No. 21-07023 |

**MOVANTS' REPLY MEMORANDUM OF LAW OF IN SUPPORT OF MOTION FOR EXTENDED STAY PENDING APPEAL**

**ABRAMS FENSTERMAN, LLP**
*Attorneys for Movants*
81 Main Street, Suite 400
White Plains, New York 10601
Telephone: 914-607-7010

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
ARGUMENT
THE COURT SHOULD GRANT MOVANTS' REQUEST TO EXTEND THE STAY ............................. 4
   A. Movants Will Likely Succeed on the Merits of Their Appeal ............................. 4
   B. Movants' Eviction Constitutes Severe, Irreparable Harm .................................. 5
   C. CRDI Will Not Suffer Substantial Harm if the Court Extends the Stay ............. 7
   D. The Public Interest Supports a Continued Eviction Stay .................................... 9
CONCLUSION .................................................................................................................... 11

## TABLE OF AUTHORITIES

PAGE(S)

Cases

*Ayyad-Ramallo v. Marine Terrace Assocs. LLC*,
    2014 WL 2993448 (E.D.N.Y. July 2, 2014) ................................................................... 5
*Brooklyn Heights Ass'n v. Nat'l Park Serv.*,
    777 F. Supp. 2d 424 (E.D.N.Y. 2011) ......................................................................... 7
*Chevron Corp. v. Donziger*,
    990 F.3d 191 (2d Cir. 2021) ........................................................................................ 4
*In re Shem Olam LLC, Chapter 11, Case No. 22-22493 (SHL)*,
    (Bankr. S.D.N.Y.) ........................................................................................................ 9
In re Zarnel,
    619 F.3d 156 (2d Cir. 2010) ........................................................................................ 9
*Tioranda, LLC v. New York*,
    386 F. Supp.2d 342 (S.D.N.Y 2005) ........................................................................... 7
*Tucker v. Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989) ........................................................................................ 2

PRELIMINARY STATEMENT

Movants respectfully submit this reply memorandum of law in further support of their motion to extend the Stay Order pending appeal.[1] The impenetrable submission by Congregation Radin Development, Inc., Chofetz Chiam, Inc., and Aryeh Zaks (collectively, "CRDI") in opposition to Movants' request for a continued stay gives new meaning to the words *distraction and obfuscation*. After burying the Court under 23 pages of a distorted and largely irrelevant narrative, *see* CRDI Br. at 1-23, CRDI studiously avoids the issues actually presented on this motion.

To extend the Stay Order, the Court need only focus on the four requirements for such relief, *i.e.,* whether Movants have: (i) demonstrated a likelihood or even a substantial possibility of success on the merits of their appeal; (ii) established that they will suffer irreparable harm absent a stay; (iii) shown that CRDI will not suffer substantial harm if a stay is issued; and (iv) identified how the public interest supports a stay. And those factors must be considered *as they relate to the challenged Eviction Order* – not, as CRDI frenetically tries to veer this motion, as a way to revisit Judge Drain's *other* orders that are presently on appeal before *other* courts.

Properly considered, those factors lead inexorably to an extended Stay Order. To start, Movants have a strong likelihood of success of the merits of their appeal because Judge Drain reneged on his repeated assurances that he would *not* evict Movants from their homes. The Eviction Order thus constitutes a clear violation of Second Circuit law governing civil contempt, which specifically provides that parties are entitled to rely on the court's interpretation of its own

---

[1] Defined terms have the same meaning set forth in Movant's Order to Show Cause.

1

injunction. *See* Alter Dec., Exh. C at 11-15. CRDI continues to ignore that reversible error apparently in hopes that this Court will too.

Movants have also shown that they will suffer irreparable harm absent a stay because *they will be evicted*. Put mildly, the expulsion of 29 men, women, and children (including little babies) from the homes in which many have lived for decades would be deeply, uniquely, and irreversibly traumatic. Not surprisingly, Courts in this Circuit have therefore repeatedly found that the threat of imminent eviction readily supports equitable relief. *See* Movants' Sup.Br. at 3. Once gain ignoring the law, CRDI instead argues that "[m]ere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay are not enough." CRDI Br. at 26.[2] Only in CRDI's mercenary world does the eviction of multiple families with small children result in a '*mere* injury.'

It is likewise clear that a continued stay of the Eviction Order will not substantially harm CRDI. Making no mention that Movants have bonded many thousands of dollars a month to ensure that CRDI will, if appropriate, be fully compensated for the use and occupancy of their homes, CRDI lists four ways in which a continued stay would allegedly harm it. *See* CRDI Br. at 27-28. None of those complaints have merit. In first granting the stay, Judge Drain rejected out-of-hand one of CRDI's claimed injures – and the others are based on documented falsehoods.

Finally, the public interest powerfully supports a continued stay. CRDI incorrectly insists that a continued stay would adversely affect the public interest in protecting individual property

---

[2] In support of this proposition, CRDI cites *Tucker v. Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989), a case affirming the denial of a preliminary injunction seeking to prevent real estate limited partnerships from making payments to their general partner. It is hardly a case that involves concerns raised by home evictions.

2

rights.  *See* CRDI Br. at 28-29.  CRDI is wrong because those interests have been adequately protected by the Movants' bonded rent payments.  But what has now become demonstrably clear over the past several weeks is that a continued stay will serve the driving public interest in preventing grave harms inflicted by bankruptcy fraud.

CRDI argues that Movants have not demonstrated "that there has been *any* change in circumstances whatsoever since June 2, 2022, that warrants any 'extension' of the stay duration." CRDI Br. at 22 (emphasis in original).  Although it is not Movants' burden to demonstrate a change in circumstances, CRDI nevertheless tries to impose it by twisting the plain text of the Stay Order.[3]  Ironically, though, there has been an enormously significant change in circumstances recently that demands a continued stay.

CRDI's fraudulent practices have been exposed.  Movants have always maintained that Aryeh Zaks and his son Henoch (CRDI's alleged principals) fraudulently seized control of the property owned by the debtor, Mosdos Chofetz Chaim, Inc., and illegally transferred it to CRDI for their own enrichment.  And, at every turn in Movants' persistent efforts to expose that fraud, Judge Drain essentially foreclosed their ability to do so – either by dismissing their actions at the threshold or otherwise stymying their case.

But a recent bad-faith bankruptcy filing in this Court has revealed Aryeh and Henoch Zaks as the fraudsters they truly are.  Precisely as they did here, Aryeh and Henoch schemed to steal, and *did* steal, another multimillion-dollar piece of real property from a religious

---

[3]    The Stay Order provides that either CRDI or Movants could move "to modify, extend, or terminate the stay at any time *before* August 1, 2022," provided that there were "any material changes to the facts presented to the Court" on June 2, 2022.   On its face, the Stay Order does not require Movants to demonstrate a material change in circumstances in order to request that the stay be extended *after* August 1, 2022.

3

corporation. It has become their signature crime. And when they were caught last month submitting perjured testimony and a fraudulent document in a state-court litigation involving the ownership of that property, they immediately filed for bankruptcy to halt those proceedings.

That case is now before this Court. At the very least, its disturbing facts draw into serious question the bases for CRDI's objection to an extended stay of the Eviction Order. Hopefully, those facts will also precipitate the unwinding of a colossal bankruptcy fraud. All things considered, this Court should be extremely wary of putting 29 men, women, and very little children out of their homes on the word of those who have repeatedly used bankruptcy as the cudgel in their deceitful schemes.

## ARGUMENT

### THE COURT SHOULD GRANT MOVANTS' REQUEST TO EXTEND THE STAY

**A. Movants Will Likely Succeed on the Merits of Their Appeal**

This is the third time that CRDI has briefed the likelihood of Movants' success on appeal: once for Judge Drain, who granted a stay, again for the district court on Movants' expedited appeal, and now for this Court. At no time, however, has CRDI ever referenced – much less, distinguished – *Chevron Corp. v. Donziger*, 990 F.3d 191 (2d Cir. 2021), which is the controlling Second Circuit decision that requires reversal of the Eviction Order. *See* Alter Dec., Exh. C at 11-15. CRDI's legal argumentation makes an ostrich look aggressive.

Rather than defend the merits of Judge Drain's eviction order, CRDI instead scrambles history and makes blatantly false representations. The sole issue for this Court's consideration *on this stay motion* is whether the Eviction Order violates the law governing civil contempt sanctions. Obviously, that issue did not arise until Judge Drain evicted Movants. Yet, CRDI opaquely claims

4

that it is a "regurgitated" argument that was previously "raised in, and rejected by, the District Court." CRDI Br. at 25. That statement is untrue. Whether the Eviction Order is at odds with *Chevron Corp.* is now before the district court for the first time on *this* appeal.

That CRDI can only resort to gross misrepresentations in addressing the merits prong of the stay analysis speaks volumes.

### B. Movants' Eviction Constitutes Severe, Irreparable Harm

The caselaw makes more than clear that home eviction constitutes irreparable injury. See Movants' Sup. Br. at 3. CRDI tries to sidestep that fact by again misstating Movants' argument. To that end, CRDI tries to make the religious burden that eviction would impose on Movants the keystone of Movants' irreparable injury claim. See CRDI Br. at 26. Although the unavoidable disruption of Movants' Sabbath observance is an aggravating factor for the Court to consider in extending the Stay Order, it is not the only manifestation of harm. Even without an adverse impact on religious practice, "[g]enerally, eviction from one's home constitutes irreparable injury." Ayyad-Ramallo v. Marine Terrace Assocs. LLC, 2014 WL 2993448, at *4 (E.D.N.Y. July 2, 2014).

Were it not intended to hurt Movants so seriously, CRDI's factual submission in opposition to Movants' request for relief would be farcical. To start, Henoch tries to show that Movants have adequate alternate housing by presenting a menu of phantom rental homes that he supposedly identified "in only a half-hour of research." See Declaration of Henoch Zaks, dated September 5, 2022 ("HZ Dec."), ¶¶ 3-4. Of course, Henoch refuses to "reveal the addresses of these homes" for fear that Movants will "torpedo" their availability. Id., ¶ 4 n.2. Setting aside that Henoch was recently caught filing a false affidavit and fraudulent document in state court, see infra at 9, his secret list of houses has no probative value.

Sean Sedaghatpour's stale affidavit, dated February 18, 2022, also submitted by Henoch,

5

is likewise useless.  See HZ Dec., Exh. 1.  Mr. Sedaghatpour was retained by CRDI nine months ago "to provide an expert opinion regarding the fair market value" of Movants rental units.  By its own terms, the report does not address the present availability of suitable homes for Movants.  It is therefore irrelevant to Movants' requested stay extension.

Finally, Henoch attacks the declaration submitted by Lonna Ralbag.  See HZ Dec. ¶ 6.  Ms. Ralbag is a licensed real estate broker who could not identify any suitable rentals within relatively close proximity of Movants' homes that are presently available.  Henoch first impugns Ms. Ralbag's candor by claiming that he "is personally aware her son is a close friend of Rabbi Meyer who has dinner in Rabbi Meyer's house on a regular basis."  That statement is false.  Ms. Ralbag's son is not a close friend of Rabbi Mayer and he has not eaten dinner at his home.  Rabbi Mayer is familiar with Lonna Ralbag's brother.  See Declaration of Shimon Zaks, dated September 7, 2022 ("SZ Dec."), ¶ 3.

Second, based upon hearsay from an unidentified third party, Henoch also claims to "know" that Ms. Ralbag was in Israel during the week that she conducted her rental search for Movants.  HZ Dec., ¶ 8.  Henoch does not personally "know" anything about Ms. Ralbag's whereabouts, however, nor does he know whether she is perfectly capable of performing a rental search while away from home.  He is just casting stones.

And third, Henoch's admitted ignorance of the applicable zoning or building codes that would affect the suitability of alternative housing does not help CRDI's case.  See HZ Dec. ¶ 9.  He is not a qualified expert to opine on those issues.  Thus, his representation to the Court that such restrictions were "not an issue with any of the [unidentified] alternative housing that [he] located" is very cold comfort.  Id.

### C. CRDI Will Not Suffer Substantial Harm if the Court Extends the Stay

CRDI principally contends that it will be harmed by a continued stay of eviction in two ways.[4] According to CRDI, the Movants' "ongoing presence continues to make it more difficult (if not impossible) for CRDI to refinance the CRDI Property in order to further develop" it. CRDI Br. at 28; *see also* HZ Dec. ¶¶ 15-17. CRDI also insists that Movants' presence "in the CRDI housing units have made it (and will continue to make it) impossible for CRDI to expand the . . . student body because it has not [sic] available housing units on campus in which to put them." CRDI Br. at 28; *see also* HZ Dec. ¶¶ 18-20. Both claims are bogus.

As to CRDI's professed obstacle to refinancing its property, it made that very same claim to Judge Drain who rejected it out of hand. At oral argument on Movants' original motion for a stay, the Court stated:

> And as far as the refinance point is concerned, that statement which wasn't even in a declaration was conclusory as well. I don't see any evidence that there's a deadline to refinance; if there were such a deadline, in what way the presence of these people on the property would make it difficult to refinance during the period pending appeal.

Reply Declaration of Daniel S. Alter, dated September 7, 2022 ("Alter Reply Dec."), Exh. A at 33-34. Although the refinance claim is asserted in Henoch's declaration, it remains fatally

---

[4] CRDI broadly asserts that Movants' interference with its ability to use its claimed property "in the manner it wishes to do so" constitutes "irreparable harm to CRDI." CRDI Br. at 27. In support of this proposition, CRDI cites *Brooklyn Heights Ass'n v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011) and *Tioranda, LLC v. New York*, 386 F. Supp.2d 342, 250 (S.D.N.Y 2005). Neither case supports CRDI's argument, however, because both decisions found irreparable harm in *damage* to the properties in issue. *See Brooklyn Heights Ass'n*, 777 F. Supp.2d at 435 (irreparable harm shown where absent injunction parties would "commence the drilling and boring of pits into the concrete floor" of an historic warehouse); *Tioranda LLC*, 386 F. Supp.2d at 350 ("permanent damage to rare and historically significant trees" held irreparable harm). That concern is not present here.

7

flawed for the other reasons noted by Judge Drain.

The refinance argument is also a sham for another reason. CRDI's refinancing problem does not stem from Movants' continued presence in their homes. CRDI's refinancing problem is firmly rooted in a multimillion-dollar tax assessment imposed on it by the Town of Ramapo. That assessment is the subject of a pending litigation in state court, about which CRDI neglected to inform this Court. *See* Alter Reply Dec., Exh. B. Ramapo maintains that CRDI is *not* eligible for a religious tax emption because it may be "merely a guise for profit making operations." Alter Reply Dec., Exh. C at ¶ 29.

In that litigation, Ramapo has also made specific charges that completely undermine CRDI's second claim of injury, *i.e.,* that – by remaining in their homes – Movants are interfering with CRDI's housing for religious students. According to Ramapo, that housing is *not* being used for CRDI's religious students. The town's attorney recently filed an affirmation in court stating:

> [CRDI's] Property primarily consists of residential housing. [CRDI] claims that all of the tenants are affiliated with an exempt educational and religious use, notwithstanding that [CRDI's] bank produced a rent roll pursuant to a subpoena that showed the majority of tenants were unaffiliated with any exempt use. [CRDI] also claims that there is no evidence supporting its claim that all of the tenants are affiliated with an exempt use, other than its unsupported statements to that effect. [CRDI] claims that there are no documents evidencing the course work of any of the students; the working hours or wages of any teachers; no marketing documents for the yeshiva; not one written lease agreement with a student or teacher as a tenant. There are no student schedules, enrollment forms, hours of attendance, payroll checks, lesson plans, curriculum, etc.

Alter Reply Dec., Exh. C at ¶ 31.

Ramapo's charges are spot-on accurate. There are 60 residential units on the CRDI property, comprised of 28 townhouses and 32 apartments. Three of those units are occupied by Henoch Zaks, his father Aryeh Zaks, and his brother Gershon Zaks. Two other units are occupied by other relatives of Henoch. All but one of the remaining housing unit residents have *no* affiliation to the school located on the CRDI property. They are ordinary tenants and CRDI is

8

simply their landlord  *See* SZ Dec., ¶¶ 6-7 & Exh. A.

Bluntly stated, CRDI's religious school is a hoax. And considering the Ramapo litigation and its possible fallout, Movants' continued presence in their own homes pending appeal is among the least of CRDI's problems.[5]

### D. The Public Interest Supports a Continued Eviction Stay

Finally, CRDI insists that the public interest in protecting private property should defeat Movant's requested for a continued stay. *See* CRDI Br. at 29. That position is shameless. The driving public interest here is not protecting CRDI's fictitious property rights. The real public interest at play is in "avoiding substantial abuse of the bankruptcy process." In re Zarnel, 619 F.3d 156, 162 (2d Cir. 2010) (internal quotation marks omitted). And that vital interest fully supports extending the Stay Order.

On July 27, 2022, Aryeh Zaks filed bankruptcy in this Court on behalf of Shem Olam, LLC ("Shem Olam"), which is a shell company that he created to front his misconduct. *See In re Shem Olam LLC, Chapter 11, Case No. 22-22493 (SHL) (Bankr. S.D.N.Y.).* That bankruptcy case was filed in bad faith, solely to evade an adverse state-court ruling regarding Shem Olam's contested

---

[5]  Henoch also makes the unhinged and unsupported claim that Movants are "stealing electricity" from CRDI. The charge is baseless. The photo of an electrical cord running from the basement of Shimon Zaks' apartment to his upstairs room does not document utility theft. Shimon pays for the electricity used in both the upstairs and basement space of his apartment unit. *See* SZ Dec., ¶ 4.

Similarly false is the Henoch's claim that Nachum Brody has ever, much less recently, harassed anyone regarding CRDI. *See* HZ Dec., ¶ 2 n.1. Mr. Brody was recently approached by Yehudah Rusak, who asked Mr. Brody to meet with him in person. Brody responded that he could meet with Rusak later at Brody's home. Rusak later came to Brody's house, where the two discussed the goings-on in Kiryas Radin. They also discussed the Halakhik (religious) law regarding their residing at Kiryas Radin, about which *Rusak* inquired. There was no harassment or intimidation involved in their meeting, and they parted on amicable terms. *See* Declaration of Nachum Brody, dated September 7, 2022, ¶¶ 4-6.

9

ownership of a multimillion-dollar property held by 82 Highview LLC ("82 Highview"). Just as here, Aryeh and Henoch fraudulently conspired to transfer to themselves an extremely valuable piece of property owned by a religious corporation with which they were affiliated. Once again, they stole from their own congregants.

Shem Olam and Aryeh moved to dismiss the state court litigation. In support of their motion, Henoch submitted a perjurious affidavit and a fraudulent operating agreement for 82 Highview that improperly vested ownership of the disputed property in Shem Olam. Through third-party discovery, however, the state court plaintiffs (including Rabbi Mayer Zaks) uncovered another operating agreement for 82 Highview that exposed Aryeh and Henoch's treachery. Shem Olam immediately filed for bankruptcy to halt the state court proceedings. That case is now before Your Honor. [6]

Movants have always maintained that Aryeh and Henoch used CRDI in this case to steal the debtor's property and drive them from their homes. Shem Olam's bankruptcy thus ought to spur close reexamination of the fraudulently procured decisions previously issued in this bankruptcy case. In the meantime, the demonstrated fraud involved in Shem Olam's bankruptcy should certainly tip the balance strongly in favor of continuing the stay of Movants' eviction pending appeal.

Movants should not lose their homes based on the claims of proven liars.

---

[6] The facts underlying the bad-faith filing of Shem Olam's bankruptcy are fully set forth in the pending motion to dismiss that chapter 11 case. A copy of that motion is attached as Exhibit D to the Alter Reply Dec.

10

## CONCLUSION

    For all of these reasons, The Movants' request to continue the Stay Order pending appeal should be granted

**ABRAMS FENSTERMAN, LLP**
*Attorneys for Movants*

By: _____
      Daniel S. Alter
      Robert A. Spolzino
      Edward A. Smith
      81 Main Street, Suite 400
      White Plains, NY 10601
      (914) 607-7010

Dated: White Plains, New York
       September 8, 2022

11