# LEVINE & ASSOCIATES, P.C.
## ATTORNEYS-AT-LAW

**15 Barclay Road**
**Scarsdale, New York 10583-2707**
**e-mail: ml@LevLaw.org**
**Fax (914) 725-4778**
**Telephone (914) 600-4288**

September 8, 2022

**Via ECF and E-mail**

Hon. Sean H. Lane, U.S.B.J.
300 Quarropas Street
White Plains, NY 10601-4140

<u>*RE: Congregants of Mosdos v. Mosdos (21-07023)*</u>

Dear Judge Lane:

The undersigned is counsel for Chofetz Chaim Inc. ("CCI") and co-counsel with Tracy Klestadt, Esq. to Congregation Radin Development, Inc. ("CRDI"), both defendants in the above-referenced matter. Earlier today, the Contemnors filed purported "reply" papers consisting, *inter alia*, a declaration by Contemnor Shimon Zaks[1] and a reply memorandum of law. We write to raise two issues with respect to the same.

Building "L" on the CRDI Property consists of two condominium units (Units 1 and 5) and four separate apartments in Unit 3. Rabbi Mayer Zaks occupies Unit 1 and Shimon Zaks occupies one apartment in Unit 3. Each condominium unit and each apartment has a separate power meter outside of Building L (there are six of them in total) that registers the power use for that individual unit or Apartment. The bill for the electricity usage reflected on those meters is sent by the power company directly to the occupant of the unit or apartment that each is monitoring. There is, however, also a *seventh* electrical meter outside of Building L that registers the use of power in *all* of the basement areas in that Building. Those areas are not supposed to be accessible to the residents, but only to maintenance staff. The bill for that meter (the one monitoring electric usage in all of the basements) is sent to, and paid by, CRDI. A copy of the most recent bill (redacted to remove the account number) is annexed for the Court's edification. Contemnor Shimon Zaks, in his declaration, while acknowledging (without explaining why) that he ran a wire to divert electricity into the unit (Unit 3) that he is illegally occupying on the CRDI Property (which he

---

[1] That is the same Shimon Zaks who is a defendant is a matter pending before Judge Seibel under Docket No. 21-01771 wherein he and his father (Rabbi Mayer Zaks) are alleged to have illegally wiretapped the phone of Henoch Zaks to record a conversation among Henoch Zaks, his father (Rabbi Aryeh Zaks) and their then attorney. When questioned in his deposition in that case as to his actions in that regard, Shimon Zaks refused to answer virtually all questions, asserting his Fifth Amendment Rights. When pressed, he stated that he was asserting his Fifth Amendment Rights because his answers could subject him to criminal prosecution. And this is the same Shimon Zaks who Judge Drain repeatedly ruled had given incredible testimony during various hearings or depositions in this Court.

## LEVINE & ASSOCIATES, P.C.
### ATTORNEYS-AT-LAW

**Hon. Sean H. Lane, U.S.B.J.**
Page 2                                                                                         September 8, 2022

could not deny given the photographic evidence), now makes the false claim that "an electric cord, which ran from our basement area to an upper floor window in our home, drew power from *our* utility account" (Shimon Zaks Declaration, ¶ 4, emphasis in original).[2] That assertion is demonstrably false for at least two reasons. First, if his claim was accepted (i.e., that a single meter monitored Unit 3 and the basement electrical usage), there was a single electricity meter for Unit 3 and its basement, then if there was no power in Unit 3, there could not possible have been power in the basement of that unit. Secondly, there is videographic evidence that shows conclusively that the backfeed wire that Shimon Zaks ran to his apartment was attached to the power in the basement *that was being monitored by the meter paid for by CRDI*.

Having admitted that they diverted power from the basement to Unit 3 (for a reason he fails to explain), we submit that the ongoing damage (and potential therefore) to CRDI is now firmly established. However, we write to advise the Court that we will be seeking, at the conclusion of the hearing a direction that an evidentiary hearing take place (during which we will present witnesses and the video evidence) to determine whether Shimon Zaks intentionally committed perjury and/or a fraud on the Court by submitting his demonstrably false declaration and the appropriate penalty for such conduct.

Secondly, neither the Contemnors' Reply Memorandum nor any declaration submitted by them addresses the issue that the very basis for their original motion for stay – that they needed to be within walking distance of their place of worship at the Bais Malek School – has now been eliminated by virtue of their eviction from that School. They do *not* deny that that eviction took place. Instead – as is also their now tired modus operandi – they now shift to a claim that the *mere eviction* from the units that they have been illegally occupying for over a year now constitutes sufficient "irreparable harm" to permit them to continue to defy this Court's Injunction prohibiting them from entering onto the property belonging to CRDI. But the burden of proof on irreparable harm is *theirs*, and they were required to establish, but did not establish) that no alternative housing is available. In fact, although it was not CRDI's burden of proof to do so, CRDI presented both expert testimony (which was not addressed *at all* in the Contemnors' reply papers) *and* the

---

[2] The fact that the Rabbi Mayer contingent makes up stories regarding their conduct *after* they are caught red-handed is not unusual. They have done that several times during the proceedings before Judge Drain. For example, after Rabbi Mayer's son, Joseph (Tzvi) Zaks cut the wires to a surveillance system on the CRDI Property and then broke into Rabbi Aryeh's office and stole and destroyed evidence, they at first denied the conduct wholesale. Then, after photographic and video evidence was produced evidencing the same, they "admitted" that they had cut the wires to CRDI's surveillance system, but then preposterously asserted that they did that to stop recordings from taking place on Shabbos. Judge Drain, after a full evidentiary hearing, soundly rejected that ludicrous claim and ruled that their testimony in that regard was incredible.

## LEVINE & ASSOCIATES, P.C.
### ATTORNEYS-AT-LAW

**Hon. Sean H. Lane, U.S.B.J.**
**Page 3**                                                                 **September 8, 2022**

testimony of Henoch Zaks. Absent proof of no alternative available housing (which, at this point, is not required to be within walking distance of the Bais Malek School), their claim of "irreparable harm" falls by the wayside.[3]

We look forward to addressing these points, as well as the other glaring deficiencies in the Contemnors' papers, in more detail, at the hearing tomorrow. We bring the above to the Court's attention at this time so that our intended request for an evidentiary hearing regarding Shimon Zaks' perjurious declaration is placed in proper context.[4]

Thank you for your attention.

                                            Respectfully,

                                         s/ *Michael Levine*

                                         MICHAEL LEVINE

cc. All counsel (via ECF and email).

---

[3] The previously submitted conclusory declaration of Lonna Ralbag is now established to be utterly useless because she claimed to have searched (albeit while she was in Israel) available rental units within a 10 to 15-minute walk from Kiryas Radin. That declaration was filed by the Contemnors to support their then (and now apparently abandoned) theory that they had to live within walking distance from the Bais Malek School. Now that they have not denied that they have been evicted from that School, her "search" (even if it was actually conducted, which doubtful) in that radius is of no consequence.

[4] So as to be clear, that request will remain extant even after the Court denies the request for an extension of the existing stay, as it is an independent attempt to commit a fraud on this Court.

# Orange & Rockland

| | | |
|---|---|---|
| | **Current balance due** $161.86 | **EFT (auto pay) on 08/19/22** |

CRDI
Account Number:                -09059

Service addr: 1-5 KIRYAS RADIN DR HSE MTR, BLDG L
Next meter reading date: September 9, 2022

## Your bill breakdown

**Last billing period**

**Your billing summary as of Aug 09, 2022**

Your previous charges and payments
Total charges from your last bill          $163.83
Payments through Aug 9, thank you        -$163.83

**Balance from previous bill**               $.00

**Your new charges**
Billing period:
Electricity charges                         $147.97
Adjustments:
    Billing Charge                           $1.50
Sales tax                                   $12.39

**Total from this billing period**          $161.86
**Total amount due**                        **$161.86**

## 📢 Messages For You

**To avoid a 1.5% late charge, please pay by 09/01/2022.**

**DO NOT PAY.** Automatic transaction will occur no earlier than Aug 19, 2022, when payment will be posted to your account.

SAFETY REMINDER: Call us if you detect any gas odors or CO concerns in your residence or business. You can reach us at 800-533-LEAK (5325) or call 911 once safely away from the premises. We follow all COVID protocols when responding to emergencies.

Whether you're starting fresh or already managing a mixed-fuel fleet, we can help make the transition to electric easier and more affordable. Get incentives to offset costs of electrifying your fleet and installing EV chargers: oru.com/PowerReady

Summer high bill alert. Electric charges may increase compared to last summer. Rising energy supply costs due to global unrest, plus weather conditions and your individual usage may affect your bill. For help paying bills go to: oru.com/assistance.

Questions? Contact Us:    🖥 oru.com/ContactUs    ☎ 1-877-434-4100

---

# Orange & Rockland
PO Box 1005, Spring Valley, NY 10977

## Your Energy Bill

# DO NOT PAY

Account number:                -09059

| EFT (auto pay) on 08/19/22 | $161.86 |
|---|---|

CRDI
20 KIRYAS RADIN DR
NEW HEMPSTEAD, NY 10977- 1331

**Orange & Rockland**
PO BOX 1005
SPRING VALLEY NY 10977

+                0009  1128009059  0000000000  0000016186

## Your electric breakdown  (Rate: ELECTRIC SMALL C&I GENERAL SERVICE SECONDARY)

**Meter detail - billing period from  Jul 11, 2022 to  Aug 09, 2022  (29 days)**

| Meter # | New Reading | Reading Type | Date | Prior Reading | Reading Type | Date | Reading Difference | Multiplier | Total Usage |
|---|---|---|---|---|---|---|---|---|---|
| 701007384 | 26718 | Actual | Aug 09 | 26023 | Actual | Jul 11 | 695 | 1 | 695 KWH |
| 701007384 | 2.51 | Actual | Aug 09 | 0.00 | Actual | Jul 11 | 2.51 | 1 | 2.51 KW |

### Your Supply Charges

| | |
|---|---|
| Merchant Function Chg  695 KWH @ 0.17600¢ | 1.22 |
| Government surcharges - Commodity | .00 |
| **Total merchant function charge** | **$1.22** |
| Forecast Mkt Sup Chg  695 KWH @ 9.59400¢ | 66.68 |
| Mkt Supply Chg Adj  695 KWH @ 0.63600¢ | 4.42 |
| Government surcharges - Commodity | .09 |
| Total Price For Elec Supply  10.243¢ Avg | |
| **Total electric supply charges** | **$71.19** |

### Your Delivery Charges

| | |
|---|---|
| **Basic Service Charge** | $23.00 |
| First 2.5 KW  3.65 | 9.13 |
| First 695 KWH @ 4.758¢ each | 33.07 |
| Energy Cst Adj 2.5 KW  0.24 | .61 |
| EVMR Surcharge 2.5 KW  0.01 | .03 |
| Energy Cst Adj 695 KWH @      0.05900 ¢ | .41 |
| DRS 695 KWH @ 0.24700¢ | 1.72 |
| RDM Adjustment  695 KWH @      0.54200 ¢ | 3.77 |
| Transition Adj Chg  695 KWH @ -0.02600¢ | -.18 |
| SBC Chg  695 KWH @ 0.56300¢ | 3.91 |
| Government surcharges - Delivery | .09 |
| **Total electric delivery charges** | **$75.56** |
| **Your electricity total** | **$147.97** |

## Understanding your bill

**Full Service** applies to customers who elect  not  to participate in Retail Choice and continue to receive both the supply and delivery of electricity and/or gas from Orange & Rockland.
**Retail Choice** applies to electric or gas customers who purchase their energy supply from an alternate energy provider rather than from the utility company.
**Basic Service Charge** covers the cost of metering, billing and other customer services.  This charge may include the cost of a minimum amount of usage that is billed.
**Billing Charge** reflects the itemized portion of the basic service charge related to issuing bills, including preparing bill and processing of customer payments.
**Capacity Charge** recovers costs the Company pays for the capacity it purchases from the NYISO.
**Customer Benefit Contribution Charge**  recovers the costs of key policy programs that aid low-income customers and fund energy efficiency and clean energy programs from customers of certain on-site renewable energy projects.
**Electric Vehicle Make-Ready(EVMR) Surcharg**e recovers costs associated with investments made by the Company and incentives paid to customers to support the infrastructure and equipment necessary to accommodate increased electricity demands associated with the deployment of Electric Vehicles, until such costs are reflected in base rates.
**Energy Cost Adjustment**   recovers costs related to O&R's prior obligation to purchase energy from non-utility generation sources and other purchase agreements that ensure service reliability.
**Forecast Market Supply Charge and Market Supply Charge Adjustment**  recovers electric supply costs incurred by O&R on behalf of its full service customers. The Forecast Market Supply Charge reflects market prices, while the Market Supply Charge Adjustment reconciles differences between prior period electric supply costs incurred by O&R and recoveries from its customers.
**Gas Supply Charge** reflects the monthly charges the company pays for purchasing gas supply on behalf of full service customers.
**Government Surcharges** include New York State and local taxes, such as the Gross Receipts Tax, and local village taxes, where applicable.
**Hourly Commodity Charge** reflects the cost of supply for customers subject to mandatory hourly pricing and Smart Home rate.
**Merchant Function Charge** for full service customers reflects certain costs associated with procuring electricity, and procuring and storing natural gas, as well as costs incurred by the company related to the credit and collections activities and uncollectible accounts.
**Metering Charge (non-residential customers only)**  reflects costs associated with metering, meter reading and data management.
**Monthly Gas Adjustment or Adjustment Charge**   recovers costs of a number of items related to delivering gas to O&R customers such as balancing charges and pipeline refunds.
**Reactive Demand** is intended to encourage certain demand billed customers to reduce their use of reactive power by charging for a power factor less than 95%.
**Revenue Decoupling Mechanism (RDM) Adjustment**   is intended to minimize the financial impact to O&R caused by lower sales as O&R implements energy-efficiency programs that help customers reduce consumption. Mechanically, an RDM functions by comparing actual versus authorized revenues and either crediting or collecting any differences from customers in a subsequent period.
**System Benefits Charge (SBC)**  recovers costs associated with clean energy activities conducted by the New York State Energy Research and Development Authority (NYSERDA).
**Supplier's Electric or Gas Charges**  reflect the cost of energy supply. This section appears on the bill only if the customer receives electric and/or gas supply from an alternate energy supplier.
**Transition Adjustment Charge**   recovers costs associated with customers making a transition to competitive service providers for electric supply, billing and metering services.

---

### How to get in touch with us    Email:  oru.com/ContactUs    Phone:  1-877-434-4100    Mail:  Orange & Rockland, 390 West Route 59, Spring Valley NY 10977

### Ways to pay your bill

1. **Auto Pay:**  Through Automatic Bill Payment, pay from your checking or savings account at no charge. To enroll, put an X in the box on the payment stub and return it with payment, go to  **oru.com/ABP**, or call Customer Assistance.
2. **Online:**  On the internet at **oru.com/MyAccount**.
3. **Phone:**  Call our **EZ Pay** Express System at **1-877-OREZPAY** (673-9729).
4. **App:**  Download the Orange & Rockland app from the App Store or the Google Play Store.
5. **Debit or credit card:**  At **www.oru.com** or toll-free at **1-800-584-1227**. Please note a third party convenience fee applies to non-residential customers only.
6. **In Person:**  At the walk up windows or at our self-serve payment kiosks in our **Walk-in Service Centers** listed below or at any authorized pay-in-person location (listed on our website). Checks, cash or money orders accepted.
     **Walk-in Service Centers**  are open Monday through Friday from 8:00 a.m. to 4:30 p.m., except holidays.
       · 390 West Route 59, Spring Valley, NY
       · 500 Route 208, Monroe, NY
       · 15 Jersey Avenue, Port Jervis, NY

7. **Home banking:**  Using your bank's website.
8. **Mail:**  Send a check or money order using the envelope provided to authorize us to make a one-time electronic fund transfer from your account. You will not get the check back. Do not send cash.

   Orange & Rockland
   P.O. Box 1005
   Spring Valley, NY 10977

   **When you provide a check as payment,  you authorize us to either use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check. You will not receive your check back from your financial institution.**



Save a stamp. Pay your bill online at
oru.com/MyAccount