UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RABBI MAYER ZAKS, et al.,

                Appellants,

-against-

MOSDOS CHOFETZ CHAIM, INC., et al.,

                Appellees.

**MEMORANDUM OPINION AND ORDER**

21-CV-10441 (PMH)

PHILIP M. HALPERN, United States District Judge:

    This appeal concerns three Orders entered by Judge Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the underlying adversary proceeding captioned *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim, Inc., et al.*, No. 21-07023 (Bankr. S.D.N.Y. 2021). (Br. Doc. 54, "Contempt Order"; Br. Doc. 89, "Reconsideration Order"; and Br. Doc. 122, "Enforcement Order").[1]

    The Contempt Order, dated June 15, 2021, found Rabbi Mayer Zaks ("Rabbi Mayer"), Shimon Zaks ("Shimon"), and Yisroel Hochman ("Yisroel") in contempt of Court for violating the Bankruptcy Court's May 25, 2021 Injunction (Br. Doc. 24, "Injunction") and ordered coercive sanctions to be imposed against the aforementioned contemnors as well as alleged contemnors—Nochum Brody ("Brody"), Leah Toby Zaks Brody ("Leah Brody"), Faige Hochman ("Faige"), Sima Weintraub Zaks ("Sima Zaks"), and Leah Bergman Zaks ("Leah Zaks," and together with Rabbi Mayer, Shimon, and Yisroel, "Appellants")—and any persons acting in concert with them

---

[1] Citations to "Br. Doc." refer to docket entries in the underlying adversary proceeding whereas citations to "Doc." refer to docket entries in this matter. "The Court may take judicial notice of the bankruptcy docket, and documents on the docket not included in Appellant's designation of the record on appeal, including hearing transcripts." *Morillo v. Wells Fargo Bank, N.A.*, No. 19-CV-08183, 2020 WL 2539068, at *1 n.2 (S.D.N.Y. May 19, 2020) (citing Fed. R. Evid. 201).

in the amount of $5,000 per person per violation of the Injunction. (Contempt Order at 4-5). The Reconsideration Order, dated July 29, 2021, denied Appellants' motion for reconsideration (made pursuant to Fed. R. Civ. P. 59(e) and 60(b), applicable to the adversary proceeding pursuant to Fed. R. Bankr. P. 9023 and 9024) of the Contempt Order. (Reconsideration Order at 2). The Enforcement Order, dated September 8, 2021: (i) found that Appellants continued to violate the Injunction; (ii) declined to impose monetary sanctions because of Appellants' belief that they were entitled to enter "the Property" (1-50 Kiryas Radin Drive, Spring Valley, New York 10977) under purported rights under the United States Constitution and New York State real property law; (iii) clarified that Appellants "have no right under the United States Constitution, the New York State Constitution, or any applicable law, to enter onto the CRDI Property or into the CCI Building, or to remain thereupon"; (iv) clarified that the Injunction remained fully extant and enforceable; and (v) ordered that coercive sanctions be imposed against in the amount of $5,000 per person per violation of the Injunction, effective as of 5:00 p.m. on September 8, 2021. (*See generally* Enforcement Order).

Appellants challenged each of these three Orders in separate appeals—an appeal of the Contempt Order (pending under Docket No. 21-CV-09186), an appeal of the Reconsideration Order (pending under Docket No. 21-CV-09256), and an appeal of the Enforcement Order (pending under Docket No. 21-CV-10441)—all of which were consolidated into the instant matter on December 9, 2022. (Doc. 6). Appellants filed a consolidated opening brief on January 21, 2022 (Doc. 8, "App. Br."), Appellees filed their consolidated opposition on March 25, 2022 (Doc. 18, "Opp. Br."), and the appeal was fully submitted upon the filing of Appellants' reply brief on April 7, 2022 (Doc. 19, "Reply").

For the reasons set forth below, all three Orders are AFFIRMED.

## BACKGROUND

This appeal involves the Bankruptcy Court's enforcement of its May 25, 2021 Injunction against Appellants and other individuals associated with them. The Bankruptcy Court's Injunction had been challenged but was affirmed by this Court on January 6, 2022. *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim Inc.*, No. 21-CV-05654 (S.D.N.Y.) ("Injunction Appeal," Doc. 29). The Injunction, *inter alia*, prohibited Appellants and those with whom they acted in concert with from: (i) "Entering onto or remaining on the real property owned by CRDI"; (ii) "Denying or obstructing access by any person to the . . . Property"; (iii) "Disrupting, conducting or interfering with any religious service or study taking place on the . . . Property"; and (iv) "Instructing or advising any resident of any residential unit located on the CRDI Property not to pay rent for the same, or otherwise interfering with CRDI's collection of rent or any tenant's payment of rent." (Injunction at 3-4). The Injunction was modified on June 14, 2021, however, to clarify that "this Order shall not be construed as permitting CRDI or CCI to bar any person who (i) has a valid written lease from CRDI, or (ii) has the legal right to possession of such residential unit pursuant to New York law (and is not a squatter) from entering the CRDI Property for the purpose of entering, occupying or exiting his or her leased unit thereon or any other appurtenant rights." (Br. Doc. 49 at 2).

The Bankruptcy Court, on June 15, 2021, held Rabbi Mayer, Shimon, and Yisroel in contempt for their willful violation of the Injunction and imposed coercive, prospective monetary sanctions against Appellants in the amount of $5,000 per violation. (Contempt Order at 4). On July 29, 2021, upon the parties' briefing and oral argument held on July 26, 2021, the Bankruptcy Court denied reconsideration of the Contempt Order. (Reconsideration Order at 2).

3

Appellees, on July 7, 2021 filed a motion for sanctions to enforce the Injunction, supported by evidence that Appellants continued to enter onto the Property, and requested the entry of monetary judgments as well as a Writ of Bodily Attachment for removal of Appellants from the Property except to the extent they do so to come or go from a residential unit. (Br. Doc. 65). The Bankruptcy Court, at a hearing on Appellees' motion on August 30, 2021, heard testimony from witnesses and entertained oral argument by the parties. At the conclusion of the hearing, the Bankruptcy Court issued its findings on the record and determined that Appellants had entered onto the Property in violation of the Injunction. (Br. Doc. 124, "Tr." at 240). The Bankruptcy Court, however, determined that "it was subject to a [fair] doubt under the *Taggart* standard" up to that point in time whether Appellants' purported defenses under the United States Constitution and New York State property law applied. (Tr. at 239-41). Although the Bankruptcy Court determined that those defenses did not ultimately apply, it decided not to impose monetary sanctions at that time against any past contemnor; and instead, again, implemented coercive, prospective sanctions of $5,000 per violation against Appellants. The Bankruptcy Court made clear that "there is no further justification for any person who is specifically notified by the movants, that they may not enter all or any part of the Property, that if they do so thereafter, they will be in contempt." (Tr. at 241:08-12).

The Bankruptcy Court, on September 8, 2021, issued the written Enforcement Order, codifying the aforementioned bench ruling. The Enforcement Order: noted that "before the issuance of this Order, there was a fair ground for doubt that [Appellants'] entry onto the [Property] was not violative"; went on to clarify that Appellants "have no right under the United States Constitution, the New York State Constitution, or any applicable law, to enter onto the CRDI

4

Property or into the CCI Building, or to remain thereupon"; and confirmed that the Injunction remained fully extant and enforceable. (Enforcement Order at 7-8).

This Court denied Appellants' application for a stay of the Enforcement Order and "emergency conference" on September 13, 2021. (Injunction Appeal, Doc. 20). The Court assumes the parties' familiarity with the remainder of the underlying facts and extensive procedural history of their dispute.

## **STANDARD OF REVIEW**

Where—as here—the Court exercises its appellate jurisdiction over proceedings in the United States Bankruptcy Court, *see* 28 U.S.C. § 158(a), it:

> may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106; *see also In re Bernard L. Madoff Inv. Secs., LLC*, No. 15-CV-01151, 2016 WL 183492, at *8 n.14 (S.D.N.Y. Jan. 14, 2016) (explaining that, although Federal Rule of Bankruptcy Procedure 8013 was amended and language explaining that the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings" was removed, the authority remains because "logic compels" that result "with respect to the appellate powers of the District Court" (internal quotation marks omitted)), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Secs., LLC*, 697 F. App'x 708 (2d Cir. 2017).

When reviewing a bankruptcy court's contempt order, this Court "may set aside the order only for abuse of discretion, but such review is more exacting than under the ordinary abuse-of-discretion standard because a bankruptcy court's contempt power is narrowly circumscribed." *In re DiBattista*, 615 B.R. 31, 38 (S.D.N.Y. 2020) (citing *In re Blair Ventures, LLC*, 581 B.R. 728,

5

732 (S.D.N.Y. 2017)). A bankruptcy court's award of sanctions is also subject to this abuse of discretion standard. *Solow v. Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010). This standard allows this Court to disturb the bankruptcy court's order when the bankruptcy court "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (internal quotation marks omitted). Accordingly, a district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law *de novo*. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law *de novo* . . . ." (internal citations omitted)). "A district court 'may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases relied upon in the decision[] below.'" *In re Ampal-Am. Israel Corp.*, 554 B.R. 604, 617 (S.D.N.Y. 2016) (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (Bankr. S.D.N.Y. 2010)), *aff'd*, 691 F. App'x 12 (2d Cir. 2017). "That said, the district court may not consider evidence outside the record below." *Id*.

## ANALYSIS

Appellants raise three arguments on appeal: (i) that the Contempt Order should be reversed and vacated because the Injunction upon which it is based is unclear and ambiguous; (ii) the Enforcement Order should be reversed and vacated because it violates the divestiture rule; and (iii)

6

the effect of the Enforcement Order is to choose the leader of a religious congregation in violation of the Establishment Clause.[2] The Court will address these arguments *seriatim*.

    I.    <u>Ambiguity in the Injunction</u>

Appellants' first argument challenges the Contempt Order and, correspondingly, the Reconsideration Order because "[t]he Injunction, the order the movants claimed that Appellants failed to comply with and that is the sole basis for the Contempt Order, is not clear and unambiguous." (App. Br. at 21).

As an initial matter, this argument is waived because Appellants did not raise it to the Bankruptcy Court. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below . . . waiver will bar raising the issue on appeal."). Indeed, Appellants declined to raise the issue of ambiguity in their written submissions or at the hearings for any of the orders at issue in this appeal. (*See generally,* Br. Docs. 57, 60, 62, 69-82, 86, 99, 109, 110, Tr.). Appellants also failed to raise the issue in front of this Court when they challenged the Injunction itself. *See generally* Injunction Appeal. Whether the Injunction is clear and unambiguous is being raised for the first time in this appeal, despite numerous opportunities for Appellants to have raised it earlier. Appellants, implicitly conceding this, do not dispute that the argument was waived but, rather, argue that this Court should use its discretion to hear it anyway because the issue is a matter of law that does not require development of an additional

---

[2] Appellants raise another argument in their opening brief "to preserve it for further appellate review." (App. Br. at 19). They argue that "to the extent . . . that the Bankruptcy Court lacked subject matter jurisdiction to grant the Injunction, it also necessarily lacked subject matter jurisdiction to enter the Contempt Order and the Enforcement Order [but that] because th[e] Court has rejected th[e] subject matter jurisdiction arguments [as to the Injunction, the argument is only included] to preserve it for further appellate review." (*Id*.). Because this argument is only raised to preserve it for appeal and is not raised as a ground for this Court to consider, the Court need not and will not do so.

7

record and in order to avoid a manifest injustice. (Reply at 2-3). The Court is unwilling to do so and disagrees that a manifest injustice is at stake. Appellants disregarded a court order, never complained that it was unclear or ambiguous, were given a break by the Bankruptcy Court on the sanctions imposed when it considered their justifications for continuing to enter the CRDI Property and/or CCI Building, and now seek to use the Bankruptcy Court's comments against it to challenge the underlying order as ambiguous. The argument is waived.

Nevertheless, and assuming the argument was not waived, Appellants' argument also fails on the merits. Appellants' argument misconstrues Judge Drain's comments at the August 30, 2021 hearing and relies on a misunderstanding of the law and must, therefore, fail. Appellants rely on the Bankruptcy Court's statement on the record that "there was 'fair ground for doubt that [Appellants'] entry onto the CRDI Property and/or into the CCI Building was not violative of the Injunction.'" (Reply at 4 (quoting Judge Drain at Tr. 240:24-241:03)).

The "fair ground for doubt" refers to two defenses raised by Appellants at the proceedings on the Enforcement Order. The first was "the defense that . . . the [Appellants] believed they had a right under the [Injunction] to enter the [P]roperty . . . as an incident to their property interest" (Tr. at 230:21-24).[3] The alleged right under the Injunction as incident to a property interest relates to the following provision thereof:

---

[3] Appellants resided on the Property prior to its purchase by CRDI. They continued to occupy residential units afterward without leases from CRDI or any legitimate possessory interest. This Court, on September 22, 2022, upheld the Bankruptcy Court's order for a writ of attachment directing the United States Marshal's Service to remove Appellants from the Property. *See Zaks v. Congregation Radin Dev., Inc.*, No. 22-CV-03807 (PMH), 2022 WL 4387450, at *2 (S.D.N.Y. Sept. 22, 2022). It is unclear whether, as of this date, that remedy has been implemented.

> [F]or the avoidance of doubt, this Order shall not be construed as permitting CRDI and CCI to bar any person who (i) has a valid written lease from CRDI, or (ii) has the legal right to possession of such residential unit pursuant to New York law (and is not a squatter) from entering the CRDI Property for the purpose of entering, occupying or exiting his or her leased unit thereon or any other appurtenant rights.

(Br. Doc. 49 at 2). Appellants thus argued that because they occupied residential units on the Property, they could enter the synagogue despite the Injunction.

Ultimately, the Bankruptcy Court found the defense "that somehow based upon a claimed property interest in the Kiryas Radin property, [Appellants] had a right to go [i]nto the synagogue" unavailing because Appellants "failed to show any property interest at all, let alone one that gave them that right." (Tr. at 250:07-11). The aforementioned provision of the Injunction provided no excuse for Appellants contemptuous conduct because Appellants had "no enforceable leasehold or other property interest." (Tr. at 243:05-06).

Appellants second defense was "that they entered the [P]roperty in the belief that their First Amendment rights to free expression [sic] of religion gave them the right to do so" (Tr. at 230:25-231:03). The Bankruptcy Court, however, determined that Appellants "failed to show on these facts a right under the First Amendment's establishment clause [or] freedom of religion clause, to continue to worship at the synagogue, contrary to the views of the owner that are clearly expressed to them." (Tr. at 250:12-15).

Because neither of Appellants defenses applied, the Bankruptcy Court concluded that there could be no "fair ground for doubt *going forward* on either of th[ose] arguments," (Tr. at 250:03-04 (emphasis added)), and that "there [wa]s no further justification for [Appellants] to enter all or any part of the [P]roperty [without the permission of CRDI]" (Tr. at 241:08-11).

9

Judge Drain stated, however, because of the invocation of the above defenses, that: "[he was] very reluctant under th[e] circumstances to award contempt sanctions to any of the alleged contemnors." (Tr. at 241:01-06). As such, he decided to "deny the motion for the award of sanctions . . . [but] make it clear . . . that any future violation of a directive by CRDI or CCI with respect to any use of the [P]roperty . . . would be subject to contempt and sanctions." (Tr. at 243:21-244:05).

Clearly, the Bankruptcy Court did not say that the Injunction was objectively ambiguous. It found that Appellants had subjective beliefs that created a fair ground for doubt *for them* as to whether they could continue to enter the Property. Such subjective beliefs, however, did not render the Injunction objectively unclear and ambiguous under the *Taggart* standard.[4]

The Supreme Court, in *Taggart*, stated that "principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019) (internal quotation marks omitted). That standard, however, is "an *objective* one." *Id.* Subjective beliefs of those enjoined are only relevant to the extent that "a party's good faith, even where it does not bar civil contempt, may be helpful to determine an appropriate sanction." *Id*; (*see also* Br. Doc. 124 at 240:04-07 ("willfulness . . . may have a bearing on the finding of *sanctions* for contempt." (emphasis added))).

The Bankruptcy Court's finding that Appellants had a good faith, albeit mistaken, belief in their asserted defenses did not render the Injunction *objectively* ambiguous but, rather, served as a *subjective* basis for refusing to impose sanctions. The Bankruptcy Court exercised its discretion not to impose monetary sanctions for contempt up to the point in time of the Enforcement Order.

---

[4] That subjective beliefs do not render the Injunction ambiguous is true both with respect to the provision of the Injunction prohibiting entry onto the Property, and with respect to the provision that provides a carve-out for those with valid property interests. Appellants did not have, at any time after the issuance of the Injunction, valid property interests and, therefore, the carve-out never applied to them.

10

This was done for Appellants' benefit and gave credit to their subjective beliefs. It did not, however, form a basis to vacate the Contempt Order or introduce any ambiguity into the Injunction. The Injunction, at all times, was *objectively* clear and unambiguous in that it enjoined Appellants from entering or remaining on the Property. (Injunction at 3-4). Having resolved the Appellants' First Amendment and property right defenses, the Bankruptcy Court reimposed monetary sanctions for future violations of the Injunction.[5]

Because Appellants' first argument as to ambiguity of the Injunction is waived and because it nevertheless fails on the merits, the Contempt and Reconsideration Orders are affirmed.

II.     Divestiture

Appellants next argue that this Court ought to vacate the Enforcement Order because the Bankruptcy Court was divested of jurisdiction to modify the Injunction once it was appealed to this Court. (App. Br. at 24). The Injunction was issued on May 25, 2021 and was appealed on the same day. (*See* Br. Docs. 23-24). The Enforcement Order was issued on September 8, 2021 (Br. Doc. 122), but the appeal of the Injunction was not resolved until January 6, 2022. (Injunction Appeal, Doc. 29).

The divestiture rule "divests the [lower] court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Courts have distinguished between "acts of enforcement and acts of alteration" when considering whether a lower court is divested while an injunctive order is on appeal. *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016). As both parties acknowledge, courts can "enforce [a] judgment" but cannot "expand upon or alter it" while it is being appealed. *In re*

---

[5] As discussed at length in this Court's decision on an appeal of the Bankruptcy Court's later order directing removal of Appellants from the Property, even after Appellants were given a reprieve from sanctions in the Enforcement Order and were warned about future contemptuous conduct, they continued to brazenly violate the Injunction. *See, generally, Zaks*, 2022 WL 4387450.

11

*Prudential Lines, Inc.*, 170 B.R. 222, 243 (S.D.N.Y. 1994). The "lower court may take no action which interferes with the appeal process or with the jurisdiction of the appellate court. It is equally established, however, that while an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the judgment." *Id.* Bankruptcy courts lack jurisdiction to tamper with "an appealed order" or "make a decision on a contested issue identical to one on appeal," *id.* at 244, but can act to "preserve the *status quo* as of the time of appeal." *In re Neuman*, 67 B.R. 99, 101 (S.D.N.Y. 1986).

The question, then, is whether the Enforcement Order expanded or simply enforced the Injunction. Appellants argue that the Enforcement Order "altered and expanded the Injunction by resolving the 'serious' or 'at least fair ground of [sic] doubt' concerning" the Injunction. (App. Br. at 26). However, as discussed *supra*, the Enforcement Order recognized Appellants' subjective belief as to how the Injunction applied to them and clarified that belief as mistaken. It did not expand the scope of the Injunction, add any other persons not previously subject to the Injunction, or modify, enlarge, or change the conduct proscribed that was not already governed by the Injunction. As such, the Injunction was not "expand[ed] upon or alter[ed]," and the fact that the Injunction was the subject of an appeal at the time did not, therefore, divest the Bankruptcy Court of the power to issue the Enforcement Order. *In re Prudential Lines*, 170 B.R. at 243. The Bankruptcy Court's recognition that the First Amendment (and New York law) did *not* permit Appellants to enter the Property did nothing more than preserve the *status quo* at the time of appeal. *In re Neuman*, 67 B.R. at 101.

Moreover, the Enforcement Order did not "interfere[] with the appeal process" of the Injunction. *In re Prudential Lines*, 170 B.R. at 244. The only issues to be decided in the appeal of the Injunction were whether the Bankruptcy Court had subject matter jurisdiction over the

12

adversary proceeding and personal jurisdiction over Rabbi Mayer. (*See* Injunction Appeal, Doc. 34 at 6:21-22 (counsel for Appellants stating that "the question here is jurisdiction. We haven't raised any other issues with respect to this appeal.")). As such, this Court was able to decide the appeal of the Injunction without issue from the Bankruptcy Court's Enforcement Order. The appeal had to do with the Bankruptcy Court's power to issue the Injunction, not the scope of the Injunction.

Accordingly, Appellants' divestiture argument fails and the Enforcement Order is, in that regard, affirmed.

### III.    Establishment Clause

Appellants' final argument is that the Enforcement Order ought to be vacated because it violates the First Amendment and New York State law. (App. Br. 28-31).

Appellees argue that this argument is waived because it was raised belatedly in front of the Bankruptcy Court. The Bankruptcy Court, however, observed at the August 30, 2021 hearing that it did not "believe that the alleged contemnors waived that argument, even though it was raised late." (Tr. at 239:24-240:01). Moreover, because the Bankruptcy Court considered the argument on its merits, it is not waived for review here. *See, e.g., Negron-Almeda v. Santiago*, 528 F.3d 15, 26 (1st Cir. 2008) ("The rule is that if an argument is raised belatedly in the [lower] court but that court, without reservation, elects to decide on it on the merits, the argument is deemed preserved for later appellate review.").

Even though this argument was not waived, it has already been considered and adjudicated in substance by this Court. This Court has previously held with respect to the Injunction that:

> the rights guaranteed under the First Amendment are not unlimited, and [Rabbi Mayer] is not guaranteed the right to worship on any property he so desires . . . . Accordingly, the [Injunction], which merely enjoins Appellant from entering the Property and conducting religious services and study thereon, has not and does not deprive [Rabbi Mayer] of his right to freely exercise his religion, because he is not the Property's owner and he has no right of access thereto. Such a minor limitation, which only prevents [Rabbi Mayer] from exercising his religion on a property that he has no lawful right to be on, and conversely, protects CRDI's property interests, is hardly a First Amendment deprivation.

*Congregants of Mosdos Chofetz Chaim Inc.*, 2021 WL 5359663, at *5. That Appellants now cite to the Establishment Clause rather than the Free Exercise clause is of no consequence here because, in either event, the Enforcement Order does nothing more than protect CRDI's property rights—which include the right to exclude others. As Judge Drain aptly noted, "inherent in the ownership of the property is the right to cause the [religious] services at the property to be changed . . . because again, assuming the validity of the transfer, inherent in the right of ownership is the right to exclude for whatever valid purpose." (Tr. at 45:25-46:06). Appellants' resort to RCL § 5, which governs the removal of a minister, fares no better because Rabbi Mayer was not removed from any religious position, he was enjoined from entering privately-owned property. "[T]he [Injunction] does not prevent [Rabbi Mayer] from exercising his religion. He is free to conduct and attend religious services. He simply cannot do so on the [P]roperty without permission of the [P]roperty's owner." (Injunction Appeal, Doc. 34 at 38:03-06).

Accordingly, the Enforcement Order is valid under the First Amendment and New York State law and is, thus, affirmed.

## **CONCLUSION**

For the foregoing reasons, the Contempt Order at Br. Doc. 54, the Reconsideration Order at Br. Doc. 89, and the Enforcement Order at Br. Doc. 122 are each AFFIRMED.

14

The Clerk of the Court is respectfully directed to terminate this case.

**SO ORDERED:**

Dated:   White Plains, New York
         October 3, 2022

PHILIP M. HALPERN
United States District Judge